Exhibit 1

38

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                   SUPERIOR COURT.
                                                                 MICV2014-01076

RSS REALTY, LLC d/b/a South Shore Primary Care

*v.*

NEW ENGLAND PAIN ASSOCIATES, P.C., et al.[1]

## MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S COMPLAINT FOR CONTEMPT

RSS Realty, LLC, filed a complaint for civil contempt alleging that Fathalla Mashali ("Dr. Mashali"), Noha Elkadry Mashali (""Mrs. Mashali), and New England Pain Associates, P.C. ("NEPA") violated a preliminary injunction that bars Dr. Mashali, NEPA, and their agents from pledging any funds or "diminishing, destroying, or disposing of" any property or assets. RSS moves for summary judgment against Dr. Mashali and Mrs. Mashali, arguing that they violated the preliminary injunction when they each pledged certain assets to the United States District Court to secure Dr. Mashali's release on bail. Dr. and Mrs. Mashali have filed separate cross-motions for summary judgment.

The Court concludes that Defendants are entitled to summary judgment in their favor on the contempt claims. Dr. Mashali cannot be held in contempt because he was never put on notice of any court order that clearly barred him from using assets to secure his release on bail: no oral order was issued at the April 1, 2014, hearing; Dr. Mashali was never put on notice of the written order entered April 8, 2014; and in any case the court's order did not clearly enjoin Dr. Mashali from pledging or otherwise using assets to secure his federal court performance bond. Mrs. Mashali cannot be held in contempt because the court's order did not bar her from pledging or disposing her own property or property she controls as Trustee of the Dover Pines Revocable Trust, and did not clearly bar her from helping Dr. Mashali use his assets to secure his release on bail. Finally, NEPA is also

---

[1]   Fathalla M. Mashali, Briarwood Estate Holdings, LLC, and Noha Elkadry Mashali. Briarwood and Mrs. Mashali are also sued as reach and apply defendants.

entitled to judgment in its favor on the contempt complaint as a matter of law pursuant to Mass. R. Civ. P. 56(c) because there is no evidence that it did anything that clearly violated the court's order.

Neither Dr. Mashali nor Mrs. Mashali argues that the court lacked jurisdiction to issue the preliminary injunction. Cf. *Matter of Vincent*, 408 Mass. 527, 530 (1990) (person may not be held in contempt for violating order that exceeds power or jurisdiction of issuing court). It is not clear that the Superior Court may grant the sort of injunctive relief at issue here to a plaintiff like RSS that is not seeking to enforce a judgment.[2] The Court need not decide this issue sua sponte, however, since RSS's complaint for contempt would fail even assuming that the preliminary injunction is valid.

1. **Legal Standards and Burden of Proof.** "To hold a party in [civil] contempt, 'there must be a clear and unequivocal command and an equally clear and undoubted disobedience.' " *Costello* v. *Board of Appeals of Lexington*, 450 Mass.

---

[2]     The request by RSS for the preliminary injunctive relief issued in this case is a "nonstatutory action[] to reach and apply" that used to be known as a "creditor's bill." See *Cavadi* v. *DeYeso*, 458 Mass. 615, 625 (2011).

Since RSS is not yet a judgment creditor of any defendant, it appears that the court may not exercise its general equity jurisdiction to temporarily grant injunctive relief in the nature of a creditors' bill attachment. See *First Nat. Bank of Boston* v. *Nichols*, 294 Mass. 173, 182-183 (1936); *Consolidated Ordnance Co.* v. *Marsh*, 227 Mass. 15, 23 (1917); *In re Rare Coin Galleries of America, Inc.*, 862 F.2d 896, 904-905 (1st Cir. 1988) (applying Massachusetts law); *Hunter* v. *Youthstream Media Networks*, 241 F.Supp.2d 52, 55-57 (2002) (Collings, M.J.) (applying Massachusetts law).

"Traditionally, a creditor's bill could be brought (i) by a judgment creditor, (ii) who had attempted to obtain satisfaction at law, and (iii) who sued in equity for the purpose of reaching property that could not be taken on execution at law." *Cavadi*, 458 Mass. at 625. The "true rule in equity is that under usual circumstances a creditor's bill may not be brought except by a judgment creditor after a return of 'nulla bona' on execution." *First Nat. Bank*, 294 Mass. at 182, quoting *Harkin* v. *Brundage*, 276 U.S. 36, 52 (1928). In cases involving fraudulent conveyances that leave a judgment debtor insolvent, the judgment creditor need not prove a fruitless attempt at execution, but still must show that it has obtained a final and enforceable judgment before obtaining equitable relief in the nature of a creditor's bill. See *Foster* v. *Evans*, 384 Mass. 687, 693-694 (1981). RSS has not yet obtained a judgment against any Defendant.

1004 (2007) (rescript), quoting *Newell* v. *Department of Mental Retardation*, 446 Mass. 286, 305 (2006), quoting in turn *Nickerson* v. *Dowd*, 342 Mass. 462, 464 (1961). Thus, "to prove civil contempt," RSS "must show that (1) the alleged contemnor had notice of the order, (2) 'the order was clear and unambiguous,' (3) the alleged contemnor 'had the ability to comply with the order,' and (4) the alleged contemnor violated the order." *Hawkins* v. *Dept. of Health & Human Servs. for New Hampshire, Com'r*, 665 F.3d 25, 31 (1st Cir. 2012), quoting *United States* v. *Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005); accord *Furtado* v. *Furtado*, 380 Mass. 137, 144 (1980). "Where the order is ambiguous or the disobedience is doubtful, there cannot be a finding of contempt." *Judge Rotenberg Educational Ctr., Inc.* v. *Commissioner of the Dept. of Mental Retardation*, 424 Mass. 430, 443 (1997).

"Indefinite and uncertain language" in a judicial order "cannot support a complaint for contempt because of a lack of fair notice to the person subject to the order, and because 'ambiguity carries with it the potential for becoming an instrument of [judicial] severity.' " *Stabile* v. *Stabile*, 55 Mass. App. Ct. 724, 726 (2002), quoting *Sax* v. *Sax*, 53 Mass. App. Ct. 765, 772 (2002). "[I]n the context of a contempt proceeding, '[a]mbiguities [must be] resolved in favor of the alleged contemnor, ... and cannot be removed by examining the evidence underlying the judgment in which the ambiguous language is found.' " *Halpern* v. *Rabb*, 75 Mass. App. Ct. 331, 336 (2009), quoting *Sax*, 53 Mass. App. Ct. at 772.

Civil contempt must be proved "by clear and convincing evidence of disobedience of a clear and unequivocal command." *In re Birchall*, 454 Mass. 837, 853 (2009). This is a more stringent burden of proof than the preponderance of the evidence standard that generally applies in civil proceedings. *Id.* at 852-853. This intermediate standard of proof requires that the truth of a proposition be established to "a degree of belief greater than the usually imposed burden of proof by a fair preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases.... The evidence must be sufficient to convey to a 'high degree of probability' " that the proposition is true. *Tosti* v. *Ayik*, 394 Mass. 482, 493 n. 9 (1985), cert. denied, 484 U.S. 964 (1987), quoting *Callahan* v. *Westinghouse Broadcasting Co.*, 372 Mass. 582, 584 (1977).

2. <u>Procedural Background and Undisputed Material Facts</u>. RSS filed this action against NEPA, Dr. Mashali, and Briarwood Real Estate Holdings, LLC, on March 11, 2014. Mrs. Mashali, who is the spouse of Dr. Mashali, was first named as a defendant in the amended complaint filed on May 30, 2014.

The original complaint contained three separate requests for preliminary injunctions in the prayers for relief. First, prayers 1 and 2 sought a preliminary injunction barring NEPA, Dr. Mashali, and Briarwood—either directly or through any agent or attorney—from, among other things, transferring, pledging, or withdrawing any funds or diminishing, destroying, or disposing of any property or assets, "except to pay ordinary and necessary living and business expenses in the usual and regular course." These prayers did not seek an order barring the defendants from pledging property other than funds held in bank or other accounts. Second, prayers 4 and 5 sought a preliminary injunction barring Dr. Mashali and Briarwood from transferring, pledging, diminishing, destroying, or disposing of "the equity or [Dr.] Mashali's ownership interest in" the real property located at 28 Briarwood Rodd, Lincoln, Rhode Island. Third, prayers 7 and 8 sought a preliminary injunction barring Dr. Mashali and Mrs. Mashali in her capacity as Trustee of the Dover Pines Revocable Trust from transferring, pledging, diminishing, destroying, or disposing of Dr. Mashali's "beneficial interest in the Dover Pines Revocable Trust, which owned the real property located at 153 Pine Street, Dover, Massachusetts.

Judge Leibensperger conducted a hearing on RSS's three requests for a preliminary injunction on April 1, 2014. Those in attendance included Dr. Mashali's counsel (Attorney Adams), Mrs. Mashali, her lawyer (Attorney Krumsiek), and counsel for RSS (Attorney Corrigan). Dr. Mashali could not attend because he was being held in jail at that time. During the hearing, Judge Leibensperger made clear he did not believe that RSS was entitled to a the preliminary injunctions that it sought with respect to the 153 Pine Street property owned by the Dover Pines Revocable Trust and controlled by Mrs. Mashali, or with respect to the Rhode Island property owned by Briarwood, and thus was denying the requests for preliminary injunctive relief set forth in prayers 4-5 and 7-8 of the original complaint. However,

Judge Leibensperger also said that he "will give [RSS] an injunction against New England Pain and Doctor Mashali, as requested in the paragraph number 1 of the prayer for relief," and that "my intent is to issue the injunction as requested in paragraph 1, except as to Briarwood, LLC." He asked RSS's counsel to submit a proposed order in that form. RSS's counsel sent an electronic draft of such a preliminary injunction to the session clerk by email on April 2, 2014.

Judge Leibensperger signed the preliminary injunction on April 3, 2014. It provides as follows:

> After hearing, the Court orders as follows:
>
> 1. That Defendants New England Pain Associates, P.AC. and Fathalla M. Mashali a/k/a Farhalla M. Mashali, and their agents, servants, employees, attorneys, and those parties in active concert or participation with them, and those persons acting at their direction or command, are preliminarily restrained and enjoined from directly or indirectly spending, utilizing, transferring, selling, mortgaging, pledging, withdrawing funds from any bank or other account of any nature, converting property and/or assets into exempt property and/or assets, converting liquid assets into illiquid assets, or in any manner diminishing, destroying or disposing of any of their property and/or assets and/or financial records, or allowing any of the above to occur, except to pay ordinary and necessary living and business expenses in the usual and regular course, until further order of the Court.

This preliminary injunction was docketed on April 8, 2014.

Later on April 8 the clerk's office gave RSS's counsel a certified copy of the preliminary injunction order so that RSS could serve copies on the Defendants. As is typically true with respect to preliminary injunctions, the clerk's office did not send out copies of the preliminary injunction to the parties or their counsel, because it expected that the party that had obtained the injunction would serve the injunction and then file appropriate returns of service.[3]

---

3   The April 8, 2014, docket entry for preliminary injunction contains at the end a notation stating "Certified Copy given in hand," which indicates that a certified copy was provided to a representative of the party that had obtained the injunction, i.e. RSS. Other docket entries for orders issued by the court in this case contain the notation "Notices mailed [date]," which indicates that the clerk's office sent copies of that docket entry to all parties on that date. The absence of a similar notation on the April 8 docket entry indicates that the clerk's office did not send out copies of the preliminary injunction to all parties.

It is undisputed, however, that for some reason RSS never followed up by serving copies of the written preliminary injunction at any time on any Defendant or on their attorneys.

It appears that by April 16, 2014, Mrs. Mashali had actual notice of the preliminary injunction. On that date Mrs. Mashali, in her capacity as Trustee for the Dover Pines Revocable Trust, filed a motion to dissolve a real estate attachment that had been issued on the 153 Pine Street property owned by that Trust. In the motion Mrs. Mashali acknowledged that Judge Leibensperger had granted the request for a preliminary injunction against Dr. Mashali and NEPA at the April 1 hearing, and quoted from the injunction that was docketed on April 8.

On June 5, 2014, Dr. Mashali and Mrs. Mashali signed a $5 million appearance bond in which they agreed to forfeit their respective interests in specified property if Dr. Mashali failed to appear for court proceedings in connection with a criminal action brought against him the United States of America in the United States District Court for the District of Massachusetts, or if Dr. Mashali were convicted in that proceeding and failed to surrender to serve any sentence. Specifically, Dr. Mashali and Mrs. Mashali agreed that if Dr. Mashali failed to do those things then they would forfeit: (1) real property located at 153 Pine Street, 160 Dedham Street, and 120 Centre Street in Dover, Massachusetts; (2) real property located at 201 North Ocean Boulevard in Fort Lauderdale, Florida; and (3) funds held in certain brokerage and bank accounts.

Dr. Mashali's attorney was present at the April 1, 2014, hearing and knew that Judge Leibensperger had stated orally that he intended to issue a preliminary injunction against Dr. Mashali and NEPA once RSS submitted a proposed order in the form requested by Judge Leibensperger. It is undisputed, however, that neither Dr. Mashali nor his attorney learned at any time prior to June 6, 2014, that Judge Leibensperger had in fact issued the preliminary injunction on April 3, 2014, when he signed the written order submitted the day before by RSS. RSS has been unable to muster any evidence that Mrs. Mashali, her attorney, or anyone else informed either Dr. Mashali or his attorney that the written preliminary injunction had been

issued at any time before Dr. Mashali pledged his interest in certain properties to the United States District Court.

3. **Claim of Contempt Against Fathalla Mashali**. Dr. Mashali is entitled to summary judgment on the contempt claim against him because the summary judgment record demonstrates that RSS cannot prove that Dr. Mashali or his attorney was ever put on notice of the court's preliminary injunction. See generally *Roman* v. *Trustees of Tufts College*, 461 Mass. 707, 711 (2012) ("A nonmoving party's failure to establish an essential element of her claim 'renders all other facts immaterial' and mandates summary judgment in favor of the moving party." (quoting *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991)). The April 1 hearing did not provide such notice because Judge Leibensperger never orally directed Dr. Mashali to refrain from doing anything. Nor can RSS prove its contempt claim based on the written preliminary injunction issued two days later, since it is undisputed that RSS never served this order on any of the Defendants and the summary judgment record makes clear that RSS cannot prove that Dr. Mashali learned of the written injunction in any other way. In any case, Dr. Mashali would be entitled to judgment in his favor even if he or his attorney had been notified that the preliminary injunction had entered, because that order did not clearly bar Dr. Mashali from using his assets to secure his release on bail.

3.1. **No Oral Order**. If Judge Leibensperger had orally directed Dr. Mashali to refrain from doing something during the preliminary injunction hearing, then Attorney Adams' knowledge of that order would be imputed to his client Dr. Mashali. See *Ruml* v. *Ruml*, 50 Mass. App. Ct. 500, 507 (2000), rev. denied, 433 Mass. 1102 (2001). But that is not what happened.

During the April 1 hearing, Judge Leibensperger never ordered Dr. Mashali to do or refrain from doing anything: he merely said that he intended to issue a written preliminary injunction against Dr. Mashali and NEPA in the form proposed in the first prayer of the complaint. Although Judge Leibensperger clearly found that RSS was entitled to a preliminary injunction against Dr. Mashali, and expressly stated his intent to issue a written order to that effect once RSS prepared and filed an appropriate proposed order, those statements do not themselves

constitute an injunction the violation of which is punishable by civil contempt. See *Town of Topsfield* v. *Beechill Corp.*, 9 Mass. App. Ct. 887, 887 (1980) (order or judgment declaring "the rights and obligations of the parties" is "not itself an injunction," and thus cannot serve as the basis of a complaint for civil contempt, even though "[i]t would have supported the entry of an injunction"). "When presented with a complaint for contempt, the court must first consider whether the order at issue provided the alleged contemnor with a 'clear and unequivocal command' to refrain from the allegedly contumacious conduct." *O'Connell* v. *Greenwood*, 59 Mass. App. Ct. 147, 149-50 (2003), quoting *Manchester* v. *Department of Envtl. Quality Engr.*, 381 Mass. 208, 212 (1980). "Only a clear and unequivocal order provides 'all who are subject to [the] order's command [with] fair notice of the conduct the order prohibits.' *Id.* at 150, quoting *Sax* v. *Sax*, 53 Mass. App. Ct. 765, 772 (2002). A statement by a trial judge of "an intention to issue an injunction in the future" is not in and of itself an enforceable injunction. See *El-Tabech* v. *Gunter*, 992 F.2d 183, 185 (8th Cir. 1993). Judge Leibensperger's statements at the April 1 hearing were merely statements of intention to issue an injunction, not a clear and unequivocal order.

Judge Leibensperger's oral statements would not constitute an enforceable injunction even if he had phrased them as a command to Dr. Mashali to refrain from doing any of the things enumerated in the first prayer of the complaint (which is not what he said). The rules of civil procedure specify that an injunction must "describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." See Mass. R. Civ. P. 65(d). Thus, an order that merely references part of the complaint is not an enforceable injunction and cannot give rise to contempt sanctions. See *Hatten-Gonzales* v. *Hyde*, 579 F.3d 1159, 1170 n.6 (10th Cir. 2009) ("An injunction that fails to comply with Rule 65(d) may not be enforced by way of contempt sanctions."); *Reich* v. *ABC/York-Estes Corp.*, 64 F.3d 316, 320 (7th Cir. 1995) (applying identical language in Fed. R. Civ. P. 65(d) to court order referring to prayer in complaint); *E.W. Bliss Co.* v. *Struthers-Dunn, Inc.*, 408 F.2d 1108, 1117 (8th Cir. 1969) (injunction that describes conduct to be restrained by reference to separate

document "is clearly invalid" under Rule 65(d)); see also *Smaland Beach Ass'n, Inc.* v. *Genova*, 461 Mass. 214, 228 (2012) (judicial construction of federal rules of civil procedure applies to parallel Massachusetts rules, "absent compelling reasons to the contrary or significant differences in content" (quoting *Strom* v. *American Honda Motor Co.*, 423 Mass. 330, 335 (1996), and *Rollins Envtl. Servs., Inc.*, v. *Superior Court*, 368 Mass. 174, 180 (1975)).

3.2. <u>No Notice of Written Order</u>. The written order issued by Judge Leibensperger on April 8, 2014, constitutes a clear and unequivocal command, and thus is an enforceable injunction. But Dr. Mashali cannot be held in contempt for violating this order because RSS cannot prove by clear and convincing evidence that Dr. Mashali "had knowledge of" it. See *Furtado*, 380 Mass. at 144.

It is undisputed that RSS failed to serve the written injunction on Dr. Mashali or his attorney. Nor can RSS point to any clear and convincing evidence that Dr. Mashali learned of the written order in any other manner. Thus, Dr. Mashali's sworn statement that he never learned the injunction had issued until after he pledged his assets to the United States District Court is undisputed for purposes of evaluating the parties' cross-motions for summary judgment.

There is no basis for the Court to impute Mrs. Mashali's knowledge of the written preliminary injunction to her spouse. The fact that two people are married is not a sufficient basis for the knowledge of one spouse to be imputed to the other, "however much our common experience [might] lead us to infer" that someone would "most probably" share such information with their spouse. *Konover Mgmt. Corp.* v. *Planning Bd. of Auburn*, 32 Mass. App. Ct. 319, 326 n.12 (1992); accord *Commonwealth* v. *Iannello*, 344 Mass. 723, 738-739 (1962). "The mere relation of husband and wife is not sufficient to show that one spouse is acting as agent of the other." *Del Bianco* v. *Boston Edison Co.*, 338 Mass. 657, 660 (1959); accord *Hannon* v. *Schwartz*, 304 Mass. 468, 470 (1939).

3.3. <u>No Unambiguous Order Barring Pledging Assets for Bail</u>. In any case, Dr. Mashali would be entitled to judgment in his favor on the contempt complaint as a matter of law even if he had timely notice of the preliminary injunction entered in this case. The court's order expressly provides that "ordinary

- 9 -

and necessary living and business expenses" are exempt from the restrictions otherwise placed on Dr. Mashali's use of his assets. This exception can reasonably be read to allow Dr. Mashali's pledging or "conditional forfeiture" of assets to secure the performance bond that he gave to the United States District Court. In other words, Dr. Mashali cannot be held in contempt because the preliminary injunction did not clearly and unambiguously bar his from using assets to make bail and secure his release from custody. See, e.g., *Wooters* v. *Wooters*, 74 Mass. App. Ct. 839, 844 (2009) (reversing contempt judgment on ground that court order did not clearly and unambiguously bar respondent's conduct).

The category of "ordinary and necessary expenses" has been construed quite broadly in the context of applying the Internal Revenue Code to the deduction of legal fees from one's taxable income as business expenses. Legal fees are an "ordinary" expenses so long as incurring them under the circumstances is "normal," i.e. "the response ordinarily to be expected" under similar circumstances. *Commissioner of Internal Revenue* v. *Heininger*, 320 U.S. 467, 471 (1943) (holding that legal fees reasonably incurred in defending one's right to carry on one's business are deductible). In other words, in determining whether expenses are "ordinary," that term "has the connotation of normal, usual, or customary." *Sherwin-Williams Co.* v. *Commissioner of Revenue*, 438 Mass. 71, 90 & 92 (2002), quoting *Deputy* v. *DuPont*, 308 U.S. 488, 495 (1940). Legal fees are "necessary" so long as they meet "the minimal requirement that the expense be 'appropriate and helpful' for 'the development of the (taxpayer's) business." *Commissioner of Internal Revenue* v. *Tellier*, 383 U.S. 687 (1966) (holding that legal fees incurred by an individual taxpayer in an unsuccessful attempt to defend himself against criminal charges arising from his business activities are deductible), quoting *Welch* v. *Helvering*, 290 U.S. 111, 113 (1933). In addition, "[i]nherent in [the] concept of 'ordinary and necessary' expenses is the requirement that any payment ... be reasonable in relation to its purpose." *Sherwin-Williams*, 438 Mass. at 93, quoting *Audano* v. *United States*, 428 F.2d 251, 256 (5th Cir. 1970).

Given this well-established interpretation of what is meant by "ordinary and necessary" expenses, the exception clause at the end of the preliminary injunction

can reasonably read to allow Dr. Mashali to use his assets to secure his release on bail. Bail is an "ordinary" expense because it is normal and to be expected that criminal defendants who are able to do so will post bail to secure their release pending resolution of the charges against them. The posting of bail was a "necessary" living expense for Dr. Mashali because doing so was "appropriate and helpful" in pursing his legitimate interest in regaining his liberty. Finally, the amount of bail posted by Dr. Mashali "reasonable in relation to its purpose" because that was the amount of security required by the United States District Court.

4. **Alleged Contempt by Noha Elkadry Mashali.** It appears that RSS claims that Mrs. Mashali violated the preliminary injunction in part by pledging her own property or property owned by the Dover Pines Revocable Trust to secure Dr. Mashali's release on bail, and in part by assisting Dr. Mashali in pledging his own assets to the United States District Court. Both aspects of the contempt claim against Mrs. Mashali fail as a matter of law.

Nothing in the preliminary injunction restricts Mrs. Mashali's ability to pledge or dispose of her own assets or property owned by the Trust. Indeed, RSS never sought an injunction restricting Mrs. Mashali's assets, and Judge Leibensperger expressly denied the request for preliminary injunctive relief with respect to the Trust's property. RSS correctly notes that the injunction applies to Dr. Mashali's agents, but that means only that his agents are enjoined from helping Dr. Mashali do something with property or assets that is clearly barred by the injunction. It does not mean that purported agents of Dr. Mashali were enjoined from disposing of their own assets.

To the extent that Mrs. Mashali can be said to have acted as Dr. Mashali's agent in helping him to pledge his own assets to secure his release on bail, that is not contemptuous for the reason discussed above: the injunction does not clearly and unequivocally bar Dr. Mashali or his agents from posting bail.

5. **Claim of Contempt Against New England Pain Associates, P.C.** The summary judgment record makes clear that RSS has no evidence that NEPA did anything in violation of the preliminary injunction. None of NEPA's assets were pledged to secure Dr. Mashali's release on bail, and even if they had been that

would not clearly and unambiguously violate the preliminary injunction. RSS makes no claim in the complaint for contempt that NEPA or its agents did anything else to violate the preliminary injunction. As permitted under Mass. R. Civ. P. 56(c), the Court will therefore order that NEPA is entitled to judgment as a matter of law.

6. **No Separate and Final Judgment.** There is no good reason for separate and final judgment to enter on the complaint for contempt. Although RSS cannot prove by clear and convincing evidence that Dr. Mashali, Mrs. Mashali, or NEPA has violated the preliminary injunction entered in this case, that order remains in effect and the substantive claims raised by RSS have not yet been resolved. It would not be appropriate to enter separate and final judgment on the complaint for contempt at this time. See *Long* v. *Wichett*, 50 Mass. App. Ct. 380, 387-404 (2000) (vacating entry of partial judgment).

## ORDER

The motion for summary judgment by plaintiff RSS Realty, LLC, is DENIED. The cross-motions for summary judgment by Fathalla Mashali and Nora Elkadry Mashali are both ALLOWED. Defendant New England Pain Associates, P.C., is also entitled to judgment in its favor on the complaint for contempt, as a matter of law, pursuant to Mass. R. Civ. P. 56(c). This order fully resolves the pending complaint for contempt.

Kenneth W. Salinger
Justice of the Superior Court

January 5, 2015

- 12 -