UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. NO. 14-10067-RWZ |
| | ) | |
| | ) | |
| FATHALLA MASHALI | ) | |

**GOVERNMENT'S MOTION TO PLACE DEFENDANT ON
ELECTRONIC MONITORING**

The United States, through Assistant U.S. Attorney Maxim Grinberg, moves the Honorable Court to order the defendant Fathalla Mashali to be placed on electronic monitoring.

On February 19, 2014, after holding an evidentiary hearing, the Court (Sorokin, J.) ordered the defendant, Fathalla Mashali ("Mashali"), detained pending trial based upon the Court's conclusion that "Mashali poses a serious risk of flight." [D. 13]. The Court found the following germane facts: (1) while on notice that he was under a criminal investigation, Mashali had purchased an airline ticket to Egypt only one day prior to his scheduled flight; (2) Mashali had lost his U.S. medical licenses and thus his ability to earn income in the United States, but not necessarily his ability to practice medicine overseas; (3) accompanying Mashali on his planned trip to Egypt was "a general letter of reference for employment along with copies of his medical certifications"; and (4) Mashali had previously wired approximately $1.7 million to Egypt. [*Id.*]. The Court determined also that the equity in Mashali's Dover residence would not "materially secure his appearance." [*Id.*]. The Court's findings were based on the sworn examination and cross-examination of an FBI agent who actively participated in the investigation of Mashali.

On May 6, 2014, after considering Mashali's motion to reconsider the order of detention and taking additional evidence, the Court (Sorokin, J.) released Mashali on strict conditions. [D.

1

48]. Among the conditions of release were a $5M bond secured with Mashali's, his wife's, and his children's assets, as well as the requirement that Mashali "shall reside at the family home on home detention twenty-four hours per day, seven days per week, enforced by electronic monitoring." [*Id.* at 7]. Mashali could leave his residence "only to attend Court, to meet with his lawyers, to attend religious services, or to receive medical treatment." [*Id.*]. "Any such departure from the home require[d] prior approval from the U.S. Probation Office." [*Id.*]. Mashali, his wife, and his children were ordered to surrender their U.S. and Egyptian passports. [*Id.*]. In its memorandum and order, the Court again emphasized facts supporting Mashali's risk of flight: "the alleged offense involved millions of dollars, the disposition of those funds remains unclear at this stage of the case, and Defendant, if convicted, faces both a lengthy recommended sentence under the Guidelines and, thereafter, certain deportation from the United States." [*Id.* at 1]. The Court made a specific finding that at the time Mashali was arrested at the airport he "attempted to go to Egypt in order to obtain employment overseas and twice pressed a contrary position before the Court." [*Id.* at 3].

On August 4, 2015, Mashali, due to his placement in intensive care at Beth Israel Deaconess hospital because of apparent liver failure, filed a motion seeking to remove his electronic monitoring bracelet because "[t]he presence of the monitoring system is inconsistent with certain testing and treatment that may be necessary." [D. 150]. The government understood that at the time Mashali could undergo emergency surgery at any time, and the presence of the electronic monitoring bracelet could potentially interfere with or slow down his treatment. The Court allowed the motion, stating that "[i]f Mr. Mashali is released from the

hospital, he shall notify probation at once and probation will assess whether he is medically able to resume electronic monitoring and report to the Court." [D. 151].

On September 31, 2015, the government learned that Mashali was released from the hospital and is back at his residence. It appears at this point that electronic monitoring will not interfere with Mashali's treatment. The facts necessitating electronic monitoring ordered by the Honorable Leo T. Sorokin are still present: prior to his arrest, Mashali wired millions of dollars to Egypt, he was apprehended at Logan airport attempting to permanently leave the United States for Egypt, and under the pending indictment he could be liable for millions of dollars to the United States and other victims.

For the above-stated reasons, the government moves the Court to order Mashali back on electronic monitoring.

    Respectfully submitted,

    CARMEN M. ORTIZ
    United States Attorney
    District of Massachusetts

By:   /s/ Maxim Grinberg
      Maxim Grinberg
      Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

    /s/ Maxim Grinberg
    MAXIM GRINBERG
    Assistant U.S. Attorney