**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | No. 14CR-10067-RWZ |
| **FATHALLA MASHALI,** Defendant. | |

**DEFENDANT'S POST-HEARING MEMORANDUM IN SUPPORT OF MOTION TO DETERMINE COMPETENCE[1]**

Fathalla Mashali, (the "Defendant" or "Mashali") by and through undersigned counsel, submits this Memorandum in support of his contention that he is not competent to stand trial herein, because, as a result of mental disease or defect, he possesses neither a sufficient rational understanding of the nature and the consequences of the pending proceedings nor can he properly or effectively assist his legal counsel in his defense. As more fully set out below, he is incompetent pursuant, inter alia, to the applicable provisions of 18 U.S. Code §4241, the Due Process Clause of the Fourteenth Amendment, and relevant decisional law.

His mental disease/ illness exist in combination with significant medical conditions (primarily sarcoidosis and liver toxicity) which only exacerbate the various psychiatric and cognitive impairments. And as reflected in the affidavits of undersigned counsel and of the Defendant's wife Dr. Noha El-Khadry, both which were earlier attached to the prior-filed,

---

[1] The document also contains a brief section with requested Findings of Fact and Rulings of Law, and several lettered Defendant exhibits

1

Motion to Determine Competency, but are now proffered as Defendant Exhibits A and B as evidence in this case, as well as being attached to this Memoranda as Exhibits for convenience sake, indicate that the Defendant neither has a rational understanding of the nature and consequences of the subject criminal proceedings nor can properly or effectively assist in legal counsel in defending. As Dr. El-Khadry testified, at the Competency Hearing, that the Defendant's apparent ability to recall, with specific regard to events relevant to the defense of the present indictment, to focus and understand questions posed by counsel, or ever to remain awake during meetings with counsel had been declining even before his liver failure in 2015 which resulted in him being hospitalized, unconscious, and unresponsive, and placed on life support for an approximate week in the Intensive Care Unit of the Beth Israel Deaconess Medical Center (BIDMC), followed by approximately three additional weeks in rehabilitation in the hospital, followed by multiple hospitalizations and stays in locked psychiatric wards periodically throughout the remainder of 2015 and throughout 2016, as will be further described below. Since, his condition has even deteriorated further, as now at home he sleeps almost continually, awakening mostly to be transported to medical and psychiatric appointments, and is usually provided with multiple cups of coffee simply to attempt to keep him conscious and awake. He is largely in a state of some level of confusion and disorientation during the majority of his waking time, is unable to walk unaided by a walker, though he usually utilizes a wheelchair, and remembers little of what he has just been told or of his past life. The foregoing is contained in the affidavits referred-to above in the medical records already proffered to the Court by the Government, and in the testimony at the Competency Hearing of Dr. El-Khadry.

    The Competency Hearing was held before this Honorable Court, Zobel, J. Doctors Allison Fife and Stuart Beck testified for the Government and, as mentioned above, Noha El-

Khadry, for the Defense. Many exhibits containing primarily medical/ psychological records were admitted by agreement into evidence. Once both parties rested, the case was adjourned, with post-hearing memoranda containing argument, any additional exhibits, and suggested findings of fact and rulings of law to be filed by July 22, 2016 by the Defendant, and at a later date for the Government.

The evidence introduced at the Competency Hearing indicated that the Defendant was diagnosed with Sarcoidosis in 2002, and his mental and physical health declined thereafter, to some extent because of the extensive and long term regimen of steroids used to treat it. Prior to the loss of his medical licenses in the 2011-2012 time period, Mashali was not well, often falling asleep while seeing patients at work, acting generally disorganized with poor decision-making, and exhibiting depressive interspersed with hypomanic behavior, all reflecting, in hindsight, the beginning of precipitous cognitive decline.

Prior to the Defendant's arrest and detention, he began to exhibit even more irrational, out-of-control behavior. For instance, the arrest herein occurred while he was under federal investigation for major healthcare fraud, was advised not to leave the state, yet bizarrely decided to fly to Egypt to confront the head of Al Quaeda, with whom he had been acquainted in Medical School some thirty years earlier, and trick him into surrendering to American authorities. His thought was that once he had demonstrated his loyalty to the United States Government, they would drop their investigation against him. He was very lucky to be arrested before being killed.

While being detained in jail after said arrest, the Defendant's health deteriorated dramatically. He became significantly more depressed, manic, disorganized, was losing weight, was perpetually nauseous, and vomiting. He was sent to an outside hospital on an emergency basis at least twice while at the jail. According to his wife's testimony, this started an accelerated

destruction of his health. He experienced numbness in arms and legs, with significantly decreased cognitive abilities. After his release from detention on GPS monitoring, his health nevertheless continued to decline. By June of 2015, he was vomiting after every meal (later diagnosed with gastroparesis) was very weak, and fraught with disorganized thought and increasing depression. He was brought to various hospital emergency rooms. In July of 2015, he was rushed to the Beth Israel Deaconess Medical Center (BIDMC) Intensive Care Unit after being found virtually unconscious, unresponsive and mumbling incoherently. He was in the ICU for seven days, four of which he was in a coma and experiencing renal and heart failure. He stayed at BIDMC for a month, then went to a rehabilitation hospital for two weeks, and was subsequently discharged to the Norwood Hospital where he was involuntarily committed in a locked psychiatric ward.

For several months, he was in and out of various emergency rooms for medical and psychiatric treatment. He had no appetite, couldn't keep food down, lost considerable weight, and because increasingly befuddled.

In January and February of 2016, he was taken again to BIDMC, then to Massachusetts General Hospital (MGH), where he was initially treated in a medical ward, (March 15-March 24 2016) and then transferred, largely at the request of Dr. Allison Fife, to Blake II, a renowned psychiatric ward, where he stayed from March 24 to April 15 2016 under the care of Dr. Stuart Beck (treating psychiatrist) who testified at the Competency Hearing, and Dr. Jeffrey Huffman (chief of Blake II) who did not. Some of the Massachusetts General Hospital records are already part of a Government Exhibit admitted into evidence. Certain other MGH records from the same grouping of records, relating to a Petition for Involuntary Commitment of the Defendant is now proffered as Defense Exhibit C, and a Petition for Guardianship/Substituted Judgement is

proffered as Defense Exhibit D. The MGH records in evidence already reflect that Mashali was variously suffering from hallucinations, dementia, severe recurrent depression with psychotic features (alternatively, mood disorder with psychotic features,) and progressive cognitive decline. The records now proffered as Defense exhibits C and D, also attached to this Memorandum for convenience sake, expressly demonstrate that during this period of hospitalization (from March 24 to April 15, 2016) both Dr. Beck, treating psychiatrist and Dr. Huffman, chief of the unit, actually petitioned to involuntarily commit the Defendant to a state mental hospital for an indefinite period, (and actually had a hearing scheduled and a lawyer appointed to represent him), actually petitioned to have a guardian appointed for the Defendant (Substituted Judgement Petition) which Petition also asserted that Mashali was incompetent to manage his own affairs, attempted to have a healthcare proxy chosen for Mashali and and endeavored to convince Mashali (and his wife, Dr. El-Khadry) that his mental illness was so severe that ElectroConvulsive Therapy (ECT), a very serious and intrusive treatment modality with significant, potential side effects and risk, only would suffice to treat him effectively and successfully.

      Apart from the foregoing being evident from the MGH records now in evidence, Dr. El-Khady testified to the above at the Competency Hearing as well. As did Dr. Beck who conceded that the Petitions for Involuntary Commitment, and the Petition for Guardian/Substituted Judgement the request for the appointment of a healthcare proxy, as well as the recommendation for immediate utilization of ECT, are only employed in cases of serious mental illness. Dr. Fife ultimately yet reluctantly conceded this as well, at the Hearing. Also indicative of the perceived seriousness of the Defendant's mental disease were the multiple "anti" scheduled drugs prescribed to him- anti- psychotics- anti- depressives, anti- anxieties, anti- pain, and sleeping

pills. Other treating hospitals and physicians generally diagnosed and medicated Mashali in a similar fashion. The MGH records introduced as Exhibits herein collectively demonstrate that for a significant period of time MGH doctors considered Mashali to be a very depressed, intermittently psychotic, anxious, demented, and otherwise cognitively impaired individual in need of serious and long term mental health intervention and psychopharmacological support.

Subsequent to MGH, the Defendant was re-hospitalized between May 5 and May 20, 2016 at Norwood Hospital (2d Norwood hospitalization) where, as Dr. El-Khady testified to, and the records corroborate, that he was suffering from major depression, dementia, cognitive decline and suicidality. This hospitalization was occasioned by the Defendant again being found unresponsive at his home- he ultimately was transferred from the medical ward to a locked psych ward, where they also recommended involuntary commitment to a state hospital, for an indefinite period of time.

Thereafter, the Defendant was sent to various rehabilitation hospital facilities and, as of today, remains at home, as Dr. El-Khadry has testified, largely asleep, confused, depressed, deeply and increasingly cognitively challenged with little ability to remember or retain information and utterly unable to communicate effectively with your undersigned, his attorney in the instant federal criminal case.

Records from the Massachusetts Rehabilitation Commission (Richard Stellar, Ed D, Dr. John Baldwin, psychologist, and Beth Israel Deaconess Medical Center, are attached hereto and proffered into evidence as Defense Exhibits E, F, and G respectively. Collectively, they paint a picture of a seriously mentally ill and frail individual, also afflicted with serious medical problems as well, which cumulatively are ravaging his body and mind in a rapidly deteriorating, oddly symbiotic, downward trajectory.

Dr. Allison Fife, the Court designated forensic psychiatrist herein, with estimable credentials and experience, has opined, to a reasonable of psychiatric certainty, that the Defendant, while not presently offering any assistance to your undersigned defense counsel, has the "capacity" to do so and chooses not to, and is therefore "competent". Dr. Stuart Beck, the treating psychiatrist at MGH Blake II in March and April of 2016, the last and arguably most comprehensive psychiatric evaluation done of the Defendant (and Dr. Fife essentially referred Mashali to Blake II and Dr. Beck for in-hospital evaluation) testifying at the Competency Hearing that he believed Mashali is malingering, faking or posturing himself in a certain way which, as will be more fully discussed below, is astoundingly at odds with virtually the totality of Dr. Beck's prior analysis and treatment direction which resulted in the Petition for Involuntary Commitment, Petition for Substituted Judgement/Guardianship, request for healthcare proxy, immediate ElectroConvulsion Therapy (ECT) treatment, prescription of powerful anti-psychotic, anti-depressive, anti-anxiety, anti-pain, sleep pills etc. And completely inconsistent with the conversations which occurred at the several treatment meetings he had with Dr. El-Khadry relative to her husband's treatment plan and overall condition.

Quite candidly, the totality of the evidence presented by exhibit and testimony at the Competency Hearing demonstrates by a clear preponderance of the evidence, that Mashali is mentally ill and that the said illness, exacerbated by very significant medical problems, clearly makes him unable to understand the nature and consequences of the proceedings against him. The evidence provided by his wife Noha El-Khardry, both at the hearing and in the affidavit in support of the Motion to Determine Competency, as well as your undersigned's affidavit in support thereof, as well the testimony on direct and cross examination of both Dr. Beck and Dr. Fife, all also forcefully demonstrate that the Defendant is not now, and has not for some time,

properly, reasonably, or effectively assisted counsel in the defense of this case; and at least going back to the better part of the past year has not even "improperly" assisted counsel, barely even interacting with him when counsel visits or phones and of course if the Defendant satisfies the requirements of either, not both, prongs of the (in)competency model he must be found incompetent. Given the diagnosis of Serious Depression with Psychotic Features (DSM Axis 1) or some other mixed Axis I mood disorder, and Anti-social and Narcissistic Personality Disorders (DSM Axis II) contained in virtually all the records evidence, including MGH records along with strong indications of continuing and significant cognitive decline, it must be concluded that the totality of the evidence compels the conclusion that the Defendant, because of his well-documented mental illness, and associated medical (Sarcoidosis, liver failure, etc.) problems is simply not able to rationally understand or effectively interact with, and assist, his counsel.

     This is only underscored, if not confirmed by Dr. Beck's own actions in March and April 2016, wherein, as the individual tasked by Dr. Fife, among others, to assess the Defendant's mental status, he diagnosed Mashali, and treated Mashali, as <u>inter</u> <u>alia</u> Defense Exhibits C and D amply demonstrate, as suffering from a severe depression with psychotic features (and with various DSM Axis II serious personality disorders), and found it appropriate if not necessary to commence an Involuntary Commitment Petition, a Guardianship/Substituted Judgement Petition, (which expressly declared Mashali to be incompetent). On cross examination both he (and Dr. Fife) conceded that the above treatment modalities are reserved for the most seriously mentally ill and after less intrusive/excessive treatment protocols fail. And if that were not enough, Dr. Beck also tried to force Mashali to undergo a regimen of ElectroConvulsive Therapy (ECT) which both Beck and Fife agreed during cross examination was also reserved for the more

8

seriously mentally ill individuals. Which I respectfully suggest is understatement, if not hyperbole.  And then of course there was the healthcare proxy request and the "anti-everything" psychopharmacological prescription package, as well.

Dr. Noha El-Khadry, refused to agree to the ECT for her husband, telling Dr. Beck that his heart, and general health, were far too fragile to withstand ECT. She also testified that Dr. Beck tried to convince her otherwise, telling her that Mashali was very sick, psychotic, and exhibited with distorted thinking and reality testing.

That either Dr. Beck or Dr. Fife, can suggest that- all of the above treatment choices- sectioning/ involuntary indefinite commitment  to a state mental institution, Guardianship/ Substituted Judgement Petition because Mashali, was according to Beck's petition, incompetent, the healthcare proxy, the regimen of ECT, the variety of powerful, mind-brain altering medications employed would _ever_ be a reasonable treatment for a malinger faking symptoms, as they would now try to have us believe accurately characterizes Mashali during this stay at MGH. This is patently absurd, if not troubling and insulting.

Dr. Beck, and his superior, Dr. Huffman, well knew that Mashali was very sick and needed serious intervention. This information was contained in their own MGH reports, as well as in the records within possession from a half-dozen other healthcare providers, and is reflected in the treatment choices they made, or tried to make for him. Dr. Beck apparently tried to back off of his more serious diagnoses and treatment plans for Mashali. Perhaps we will never know what actually occurred in the face of overwhelming and repetitive evidence to the contrary of the true depth of Mashali's mental illness and obvious overall frailty.

Dr. Mashali needed help and didn't get it, if anything, his condition continues to deteriorate and he needs it even more now. He is severely mentally ill. Because of said illness

9

exacerbated by his physical maladies, he is not, and cannot properly or reasonably assist your undersigned counsel in the defense of his criminal charges. I respectfully suggest that this Defendant who periodically, when awake, rails that he has done nothing wrong, (according to medical records and witness testimony) has no "rational" vice "factual" understanding of either the proceedings, their consequences and nature, the first prong of the disjunctive (in)competency model. And I certainly respectfully again submit that the second prong, properly, reasonably, or effectively assisting counsel in the defense of the case, is something which is far out of reach for Fathalla Mashali, notwithstanding Dr. Fife's speculation of the true meaning of "capacity" in this context. Whatever theoretical "capacity" Mashali might once have had was long ago destroyed by the practical reality of his crippling mental illness and a physical body ravaged by a progressive auto-immune disease.

    And, parenthetically, it has been made known to the Defendant, and his family, should there be a finding of incompetency, the Defendant shall be committed, CAG for incarceration and treatment for an uncertain and perhaps ultimately protracted period of time.

Accordingly, and for the sake of brevity and judicial economy, I request the following Findings of Fact:

1. Based on the medical records, other exhibits, and testimony at the Competency Hearing, this Court finds, by a preponderance of the evidence, that the Defendant Fathalla Mashali, is suffering from a mental disease or defect, that results in him being unable to rationally

understand the nature and consequences of the proceedings and charges pending against him.

2. Based on the medical records, other exhibits, and testimony at the Competency Hearing, this Court finds, by a preponderance of the evidence, that the Defendant Fathalla Mashali, is suffering from a mental disease or defect, which results in him being unable to properly, reasonably, and effectively assist his counsel in the defense of the pending criminal case.

Again, for the sake of brevity and judicial economy, I request the following "Rulings of Law":

1. As a result of the Findings of Fact above (#1), namely that the Defendant Fathalla Mashali is suffering from a mental disease or defect, that results in him being unable to rationally understand the nature and consequences of the proceedings and charges against him, I rule as a matter of law that Fathalla Mashali is not competent to stand trial.

2. As a result of the Finding of Fact above (#2), namely that the Defendant Fathalla Mashali is suffering from a mental disease or defect, that results in him being unable to properly, reasonably, and effectively assist his legal counsel in the defense of the pending federal criminal indictment, I rule as a matter of law that Fathalla Mashali is not competent to stand trial.

Dated: July 22, 2016         Respectfully submitted,
                             FATHALLA MASHALI
                             By and through his attorneys,

                              /s/  *Jeffrey A. Denner*
                             Jeffrey A. Denner BBO#120520
                             Jeffrey Denner Associates, P.C.
                             Four Longfellow Place, 35th Floor
                             Boston, Massachusetts 02114
                             Tel.:   (617) 227-2800
                             Fax:    (617) 973-1562
                             jdenner@dennerlaw.com