UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 14-10067-RWZ

UNITED STATES OF AMERICA

v.

FATHALLA MASHALI

ORDER

September 9, 2016

Defendant Fathalla Mashali has been charged with healthcare fraud, conspiracy to commit mail fraud, and money laundering. Broadly speaking, the government alleges that between 2010 and 2013, defendant – who was then a licensed physician operating several pain clinics in New England – devised and implemented a scheme to defraud health care benefit programs by submitting false and fraudulent claims for services that were not medically necessary and/or not provided to patients. Defendant allegedly transferred the scheme's proceeds into personal accounts controlled by him and/or his wife and used the money for personal expenses.

In late 2015, defendant's counsel moved for a competency hearing for defendant pursuant to 18 U.S.C. § 4241. The court allowed that motion, appointed a psychiatrist to evaluate defendant, and on June 30, 2016, held a competency hearing. Following are my findings of fact and conclusions of law.

I.      **Findings of Fact**

Defendant, a physician in his sixties, operated several pain management clinics until 2013 when he lost his medical license. He has a history of some physical ailments, but the bulk of his health concerns began in 2013 and became more pronounced in 2014 after he was arrested on the pending charges and detained for approximately three months. While in detention and since his release from custody, defendant has been in and out of several hospitals, psychiatric units, and rehabilitation facilities for treatment of his physical and mental conditions.

During the competency hearing, the following three witnesses testified about defendant's health and competency:

- Dr. Alison Fife – an experienced psychiatrist whom the court appointed, with input and assent from both parties, to evaluate defendant and provide an opinion regarding his competency to stand trial.

- Dr. Stuart Beck – a psychiatrist who was defendant's attending physician during his spring 2016 care at the Blake II Inpatient Psychiatric Unit at Massachusetts General Hospital.

- Dr. Noha Elkadry – defendant's wife.

I find all three witnesses credible. Based on their testimony and other evidence presented, I make the following findings regarding defendant's health.

A. **Physical Health**

Before defendant's arrest in 2014, his physical health was overall quite good. He suffered from sarcoidosis – a condition involving abnormal collections of inflammatory cells in the body – for many years. However, he received treatment such that the condition did not significantly affect him. Since his arrest, defendant's physical health has declined. He has lost weight, become physically weak, lost consciousness on several occasions, and experienced seizures and liver failure. These conditions are in

large part due to his deliberate manipulation of his fluid, food, and medication intake – behaviors that medical professionals have witnessed during his detention and hospitalizations.  Defendant's poor nutrition has caused gastroparesis, a condition of partial paralysis of stomach muscular function which causes the slow movement of food into the small intestines.  Doctors have instructed him to eat several small meals a day and to take antacid medications to treat this condition, but he has generally failed to comply.

    B.    **Mental Health**

Defendant's mental well-being has also been overall poor in the past several years.  Even before his arrest, his wife noticed some unusual behaviors, including poor decision making, disorganization, manic episodes, and depression.  Since his arrest, defendant's mental state has continued to decline.  He has become more depressed, lost some of his cognitive functioning, and experienced nightmares, deliriousness, paranoia, anxiety, and possible hallucinations.  According to his wife, defendant at times repeats himself and appears withdrawn or confused.  He also believes that he is dying – he has told his wife and doctors this, and has often requested palliative care while hospitalized.  Defendant's doctors have diagnosed him with various psychiatric illnesses including mood disorder with psychiatric features, severe depression, narcissistic personality disorder, and social personality disorder, and prescribed him a number of medications including anti-depressants, anti-anxiety pills, sleep aids, and anti-psychotic medications.

Mostly recently in the spring of 2016, at the recommendation of Dr. Fife, defendant underwent an inpatient neuropsychiatric evaluation at the Blake II Inpatient

Psychiatric Unit at Massachusetts General Hospital ("MGH"). There, defendant was treated under Dr. Beck's supervision with a combination of medication, psychotherapy, physical therapy, occupational therapy, and nutritional support. Dr. Beck and other treatment providers at MGH confirmed that defendant suffers from severe depression. In fact, defendant's depression was so severe that the doctors at MGH considered using electro-convulsive therapy (an intrusive treatment only prescribed in severe cases) and filed petitions for involuntary commitment and involuntary guardianship. However, his doctors also considered defendant to be malingering, in particular that he was fabricating or intentionally producing medical symptoms. They based this assessment in part on the invalid results obtained from two neuropsychological tests they administered. These results showed that defendant had over-reported and/or under-reported his symptoms, leading doctors to believe that he had manipulated his responses to appear more psychiatrically ill than he in fact is. According to Dr. Beck, defendant's physical and mental health generally did not improve during his MGH admission because he chose to engage only minimally in therapy and refused to comply with the nutritionist's diet recommendations.

    Dr. Beck also testified about defendant's mental state as it relates to the charges pending against him in this case. He explained that defendant displayed an overt disdain for the legal system and would at times become very angry when a topic relating to legal process would arise. He also threatened the government for destroying his life and his family. Dr. Fife testified that during her meetings with defendant, he opened his eyes, made eye contact, gave clear and coherent answers, and even used a bit of humor when conversing about topics unrelated to the present prosecution.

However, discussing topics relating to the charges was "like talking to a different person" – defendant appeared disinterested and irritated, used a sarcastic tone, put his head in his hands, and closed his eyes. When Dr. Fife asked defendant about the pending case, he proclaimed his innocence and stated that he feels as though the system is biased against him and that he is being prosecuted because he is Muslim. When asked about his ability to work with his attorney, he responded: "What do you expect me to do, read millions of pages of documents?" Dr. Fife also explained – based on her observations as well as her interviews with defendant's wife and counsel – that defendant generally refuses to engage in any discussions, either with his attorney or others, about the pending prosecution. Defendant's wife testified that although her husband has a general sense of the charges against him, he does not recall specific facts from the relevant events and is often not able to recall conversations that he has with his attorney about the case.[1]

Since his discharge from MGH, defendant has spent some time at a rehabilitation facility where he participated in physical therapy. All who testified at the hearing agree that at present, defendant's mood and appearance are better than they have been over the past couple of years. During the competency hearing, which lasted several hours, defendant stayed awake and appeared alert to the proceedings. Although he generally slouched in his wheelchair and looked down, he frequently sat up straighter and perked up.

---

[1] In support of his post-hearing memorandum, defendant's counsel submitted an affidavit in which he explains his observations of defendant's condition and his difficulties in working with his client in the context of this case. The court has considered the affidavit, but affords it less weight than the evidence presented at the hearing because it is dated December 2, 2015 (see Docket # 263-1) – more than 6 months before the competency hearing.

### C. Dr. Fife's Opinion

To form her opinion in this matter, Dr. Fife interviewed defendant three times, spoke with defendant's wife and counsel, and reviewed defendant's medical records from about 2014 to the present together with other materials she received pertaining to this case. Ultimately, she concluded that defendant is competent to stand trial.

As to defendant's physical ailments – Dr. Fife opines that although the sarcoidosis may cause him some discomfort, it does not affect his competency. His current physical weakness is overall self-imposed through manipulation of food, fluids, and medications. In Dr. Fife's view, defendant designs these behaviors to "keep himself sick and avoid this whole process." Any physical weakness is therefore not an indication of a lack of competence to prepare for and stand trial.

As to defendant's mental condition – Dr. Fife acknowledges that certain of the disorders from which he suffers can, depending on the circumstances and external stressors, greatly affect an individual's functioning. However, in this case, defendant's intellect and thinking capacity are basically intact despite his several diagnoses. Dr. Fife bases that opinion in part on the fact that he can converse fluidly about any topic other than the pending criminal matter. Defendant also has intact memory about most things in his life, but his recollection appears to fade when talking about events that relate to this case.

Regarding defendant's difficulties in working with counsel, Dr. Fife opines that this is an issue of willingness rather than of competency. Dr. Fife explained that the pending charges undoubtedly cause defendant to feel overwhelmed and devastated, and the prospect of going through the relevant documents with counsel is a daunting

task.  Nonetheless, she concludes that defendant is deliberately refusing to work with his attorney in a conscious effort to avoid the charges against him.

## II.    Conclusions of Law

"The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial."  Medina v. California, 505 U.S. 437, 439 (1992).   In the event that the competency of the defendant is questioned, 18 U.S.C. § 4241 provides that  "[a]t any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant... the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant."  Where, as here, the defendant files such a motion, he carries the burden of proving by a preponderance of the evidence that he is incompetent to stand trial.  Cooper v. Oklahoma, 517 U.S. 348 (1996); 18 U.S.C. § 4241(d).  For a defendant to be competent to stand trial, it is not enough that he may be oriented to time and place and have some recollection of events.  Dusky v. United States, 362 U.S. 402, 402 (1960).  Instead, the relevant test is two-part:  "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."  Id.

The required understanding of the proceedings "is of the essentials—for example, the charges, basic procedure, possible defenses—but not of legal sophistication."  United States v. Brown, 669 F.3d 10, 17 (1st Cir. 2012) (citations omitted).  Here, there was no evidence to suggest that defendant does not understand the charges against him or the purpose of the proceedings in this case.  There is no

question that he suffers from mental impairments that affect his functioning. However, the presence of mental illness, even severe, is not sufficient to show incompetence if the defendant is otherwise able to understand the proceedings. See Bolius v. Wainwright, 597 F.2d 986, 990 (5th Cir. 1979). Furthermore, although defendant apparently believes that this prosecution is biased or in other ways flawed, these feelings do not evince a lack of understanding of the proceedings. Instead, the evidence supports a conclusion that defendant is a smart man whose intellect and thinking capacity are generally intact.

As to a defendant's ability to assist counsel in his defense, factors to be considered include:

> whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.

State v. Snyder, 750 So. 2d 832, 852 (La. 1999). Here, the evidence does not show that defendant is unable to assist his counsel – rather, he appears simply unwilling to do so. To the extent that he seems to have difficulty working with his attorney, both doctors agree that he is malingering. A defendant who refuses to help his attorney in the preparation of his defense – as contrasted with a defendant whose mental trend or stream of speech renders him actually unable to communicate with his counsel – is not incompetent, although he might be unwise. See, e.g., Ferry v. State, 453 N.E.2d 207, 212 (Ind. 1983).

## III. Conclusion

Defendant suffers from physical and mental conditions that make this process hard for him. It is clear that it is difficult for counsel to work with him under these circumstances. However, defendant has failed to show by a preponderance of the evidence that he is incompetent. I therefore find him competent to stand trial. A pretrial conference is scheduled on September 20, 2016, at 3:00 p.m.


| September 9, 2016 | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |