# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) CRIMINAL NO. 14-10067-RWZ ) |
| FATHALLA MASHALI | ) ) ) |

## GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DR. ROGER H. GRAY

### INTRODUCTION

Pursuant to Fed. R. Evid. 401-403 and 702, the government moves *in limine* to exclude the testimony of Dr. Roger H. Gray. Relevant to this motion, the defendant is charged with twenty-seven counts of health care fraud and one count of mail fraud conspiracy.[1] In September 2016, the defendant filed his notice of intent to assert an insanity defense. Dkt. No. 278. The defendant then submitted an expert report from Dr. Roger H. Gray on the issue of whether, in Dr. Gray's wording, the defendant "suffered from a mental disease or defect which resulted in a lack of substantial capacity to know right from wrong." Dr. Gray Report ("Report") at 1. A curious thing happened, however, on the way to trial—Dr. Gray concluded that the defendant was *not* insane for purposes of federal law. Unbowed, the defendant now seeks to solicit testimony from Dr. Gray that the defendant lacked the mental capacity to form the specific intent to commit health care fraud and mail fraud conspiracy, as charged in the operative indictment.

---

[1] The defendant is also charged with sixteen counts of money laundering. The government is not required to prove specific intent with respect to the money laundering charges, and therefore Dr. Gray's putative testimony does not bear on those counts.

The defendant's psychological evidence should be barred. Nowhere in his Report does Dr. Gray purport to offer evidence that could lead the jury to conclude that the defendant did not have (or could not have had) the specific intent to commit the crimes charged in the indictment. Aside from his conclusions regarding the defendant's competency, which the Court already adversely determined against the defendant,[2] Dr. Gray only opines that the defendant lacked the capacity to conform his conduct to the law's requirements. As such, Dr. Gray could only testify that the defendant acted criminally but his behavior should be excused. The Insanity Defense Reform Act ("IDRA"), however, expressly forbids that sort of diminished capacity defense. *See* 18 U.S.C. § 17 ("It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. *Mental disease or defect does not otherwise constitute a defense*.") (emphasis added); *see also United States v. Cameron*, 907 F.2d 1051, 1066 (11th Cir. 1990) (stating that with the enactment of the 18 U.S.C. § 17, Congress intended to eliminate "the use of 'non-insanity' psychiatric evidence that points toward exoneration or mitigation of an offense because of a defendant's supposed psychiatric compulsion or inability or failure to engage in normal reflection").

Even if federal law did not explicitly prohibit the sort of mental health evidence that the

---

[2] Dkt. No. 276 ("I therefore find him competent to stand trial."). Dr. Gray also provides no support whatsoever for his statement that the defendant lacks competency to stand trial. In stark contrast to Dr. Gray's wholly unfounded dictum regarding the defendant's competency, Dr. Allison Fife and Dr. Stuart Beck provided detailed, and supported, testimony to the contrary during the defendant's competency hearing on June 30, 2016, where, in addition to other reliable information, they unambiguously referenced the defendant's years-long manipulation of doctors, malingering, and intentional invalidation of two cognitive assessments in March and April 2016.

defendant seeks to solicit from Dr. Gray, the latter's testimony is still wholly irrelevant to the issues in this case. Dr. Gray's opinion about how the defendant's supposedly impaired mental state affected his ability to act in conformity with the law has no bearing on whether the defendant was capable of acting with specific intent. Nothing in Dr. Gray's Report constitutes evidence that the defendant did not commit the charged crimes. In short, Dr. Gray's testimony is irrelevant, and should be excluded under Rules 401 and 402.

Even if Dr. Gray could offer some relevant testimony, its probative value (if any) would be substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. *See* Fed. R. Evid. 403. Specifically, the jury could easily be misled into thinking that Dr. Gray's psychological opinion evidence "amount[s] to temporary insanity or ameliorates the offense." *United States v. Schneider*, 111 F.3d 197, 203 (1st Cir. 1997).

Finally, because Dr. Gray does not opine that the defendant lacked the capacity to form the specific intent to commit the charged crimes, under Fed. R. Evid. 702, he should not be permitted to testify to such a conclusion. That is, any testimony to that effect would not be based on sufficient facts or data, as Dr. Gray's Report makes no mention of any facts that would support the notion that the defendant was incapable of acting with intent. Nor would Dr. Gray's testimony represent the application of reliable principles and methods, as the underlying data is absent; thus there is no "it" to which Dr. Gray could apply any principle or method.

Accordingly, the Court should exclude Dr. Gray's testimony.

**ARGUMENT**

**I.     Dr. Gray's Testimony is Prohibited by the IDRA**

Dr. Gray's Report contains no opinion that bears on whether the defendant had the specific intent to commit health care fraud or conspire to commit mail fraud. Rather, as pertains to this

3

motion, Dr. Gray only opines that the defendant's mental health "profoundly impaired and diminished his capacity to conform his behavior to the requisites of the law, as per McHoul criteria."[3] Report at 5. Simply put, the defendant is prohibited from offering expert testimony of this sort. Aside from the insanity defense, federal law does not permit a defendant to offer evidence of a mental disease or defect *as a defense in and of itself.* 18 U.S.C. § 17; *see Schneider*, 111 F.3d at 203 (stating that with the IDRA, codified at 18 U.S.C. § 17, "Congress raised the hurdle for an insanity defense and *barred a new diminished capacity defense that courts were beginning to invent.*") (emphasis added); *see also United States v. Brown*, 326 F.3d 1143, 1147 (10th Cir. 2003) ("The admission of [psychiatric evidence to rebut intent] will depend on whether the defendant clearly demonstrates how such evidence would negate intent rather than 'merely present a dangerously confusing theory of defense more akin to justification or excuse.'") (citing *Cameron*, 907 F.2d at 1051); *United States v. Pohlot*, 827 F.2d 889, 896 (3d Cir. 1987) ("Congress deleted the 'volitional prong' of the commonly accepted Model Penal Code approach [to the insanity defense,] which had permitted acquittal if the defendant 'as a result of mental disease or defect . . . lacks substantial capacity . . . to conform his conduct to the requirements of the law.'" (citing Model Penal Code § 4.01 (1962))).

---

[3] Dr. Gray's reference to "McHoul" is almost assuredly a nod to *Commonwealth v. McHoul*, 226 N.E. 2d 556 (Mass. 1967), which held that a person is not responsible for his conduct if at the time of such conduct as a result of mental disease or defect s/he lacked the capacity to conform his/her behavior to the requirements of the law.

As evidenced by his expert report, Dr. Gray's testimony would only relate to the defendant's capacity to conform his behavior to the law.[4] That is precisely the type of opinion testimony that Congress sought to eliminate in passing the IDRA. Accordingly, because federal law expressly precludes Dr. Gray's testimony, it should be excluded.

## II. Even Assuming Dr. Gray's Testimony Were Permissible, it Should Nevertheless Be Excluded Pursuant to Rules 401-403 and 702

### A. The Court of Appeals Has Recognized Significant Barriers to the Admission of Any Mental Health Evidence for the Purposes of Negating Specific Intent

As detailed above, with the exception of the insanity defense, the IDRA bars the introduction of mental health evidence to make out a defense of mental disease or defect. Mental health evidence is theoretically permissible if introduced to negate intent, but the Court of Appeals for the First Circuit has documented significant barriers that any defendant must overcome in seeking admission of such evidence.[5] *Schneider*, 111 F.3d at 201 ("Once past the threshold of section 17(a), the situation becomes more difficult for the defendant."); *see also Pohlot*, 827 F.2d at 897 (holding that 18 U.S.C. § 17(a) does not bar use of psychiatric evidence to negate an element of the offense, but does prohibit such evidence as a defense in and of itself). The *Schneider* court noted three such barriers, all of which apply here:

> The *specific* medical evidence offered may still be irrelevant to the requisite intent, *White*, 766 F.2d at 24, or probative value may be substantially outweighed by confusion or delay. Fed. R. Evid. 403, *Kepreos*, 759 F.2d at 964. Finally, if the evidence is expert testimony, it must meet the further requisites of scientific

---

[4] Additionally, "a lack of self-reflection [also] does not mean a lack of intent and does not negate mens rea." *Pohlot* 827 F.2d at 906.

[5] Of course, pursuant to Rule 704, Dr. Gray may not testify to the conclusion that the defendant did not have the specific intent to commit the charged acts.

5

reliability and helpfulness to the jury. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-91, 113 S. Ct. 2786, 2794-96, 125 L.E.2d 469 (1993).

*Schneider*, 111 F.3d at 201.

**B. Dr. Gray's Testimony Would Be Irrelevant Under Rules 401 and 402**

If allowed, Dr. Gray's testimony would be wholly irrelevant to any issue in this case. With respect to the health care fraud counts and the mail fraud conspiracy count, the government must show, among other things, that the defendant specifically intended his actions. The defendant, of course, may call witnesses to adduce relevant evidence that he lacked the specific intent to defraud. *See Schneider*, 111 F.3d at 201 (explaining that although it is hypothetically possible to offer evidence of the defendant's lack of specific intent, it is quite difficult to do so in accordance with Fed. R. Evid. 401–403, 702 and 703). Under no circumstances, however, is the defendant entitled to the admission of irrelevant mental health opinion evidence. Fed. R. Evid. 401, 402. Dr. Gray's testimony would be precisely that—irrelevant.

Dr. Gray's Report contains no opinion regarding whether the defendant formed the specific intent to commit health care fraud or conspire to commit mail fraud. Nor does Dr. Gray claim that the defendant's alleged bipolar disorder, sarcoidosis, or any other of his purported conditions negated the defendant's capacity to act with specific intent. Nothing in Dr. Gray's Report addresses whether the defendant was capable of acting in a purposeful, deliberate, and goal-oriented manner.[6]

---

[6] On the other hand, both Drs. Stuart Beck and Alison Fife testified that the defendant deliberately tried to undermine the government's ability to try him in a court of law and sabotage their and other providers' assessments of his cognitive capacities. (*See* Dkt. 276 at 2-3, 8 [the Court found the experts "credible" and determined that the defendant's medical "conditions [were] in large part

Even had Dr. Gray offered any opinion that the defendant for some reason was incapable of acting purposefully in a goal-oriented manner, Dr. Gray makes no temporal connection, nor can he, between the dates charged in the indictment and periods during which, allegedly, his bipolar condition was active. *See United States v. Agnello*, 158 F. Supp. 2d 285, 289 (E.D.N.Y. 2001) (barring mental health evidence on the basis that the defendant could not demonstrate how his condition affected intent on any specific relevant date). Even if the Court were to accept that any one or more of the defendant's conditions, at least under some circumstances, could render one incapable of acting with the requisite intent, Dr. Gray simply could not know whether the defendant was operating under a mental health impediment on a relevant date in the indictment. There is no fact in Dr. Gray's Report that ties any diagnosis of the defendant to any date of legal significance. *See, e.g., United States v. Gant*, 74 F.3d 1234, 1996 WL 13929, *3 (4th Cir. 1996) (affirming district court's striking of defendant's insanity defense because defendant could not show that he was suffering from mental illness on the weekend he committed the crime). Finally, Dr. Gray appropriately does not deign to suggest that the defendant's bipolar disorder, with its (at best) intermittent outbursts, could somehow negate the defendant's intent *for the duration* of the lengthy time period charged in the indictment.

As pertains to this motion, Dr. Gray's only opinion is that the defendant's mental health "profoundly impaired and diminished his capacity to conform his behavior to the requisites of the law, as per McHoul criteria." Report at 5. Dr. Gray's Report is silent concerning whether the defendant could have acted with specific intent. His opinion has no relevance to that issue,

---

due to his deliberate manipulation of his fluid, food, and medication intake"; "both doctors agree that he is malingering"]).

7

and thus it should be excluded.

### C. Even if Dr. Gray Could Offer Any Relevant Evidence on the Issue of the Defendant's Mental State, It Should Be Excluded Under Rule 403

Even if Dr. Gray's testimony regarding the defendant's "impaired and diminished capacity" were somehow relevant, it should still be excluded under Fed. R. Evid. 403. Rule 403 permits the Court to exclude "relevant evidence if its probative value is substantially outweighed by [the] danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Dr. Gray's testimony would run afoul of Rule 403 because its relevance, if any, would be of minor import, and would be significantly outweighed by the defense's unfairly prejudicial, confusing, and extraneous evidence bearing on the defendant's health troubles, hospitalizations, and life history. This evidence would improperly appeal to the jury's sympathies, without meaningfully negating the government's proof of the defendant's requisite intent. Courts regularly exclude this kind of evidence because its minimal relevance is far outweighed by the risk of unfair prejudice to the government's case. *See, e.g., United States v. Richards*, 9 F. Supp. 2d 455, 458-60 (D. N.J. 1998) (excluding evidence of Major Depressive Disorder to show lack of intent because it could not negate evidence defendant purposefully embezzled money, and would improperly mislead the jury under FRE 403). Here, there is a substantial risk that the jury would be swayed inappropriately by hearing about the defendant's mental and other health conditions, all of which the defense concedes do not amount to a basis to invoke the insanity defense, and none of which have anything to do with the defendant's capacity to form specific intent.

In *Schneider*, the Court of Appeals addressed the exact scenario at issue here and upheld the district court's exclusion of the defendant's psychological experts. The Court of Appeals' ruling in *Schneider* strongly suggests that the Court should exclude Dr. Gray's testimony because

8

of the danger of unfair prejudice and its capacity to confuse and mislead the jury.[7] *See also Cameron*, 907 F.2d at 1067 (recognizing that psychological evidence "presents an inherent danger that it will distract the jury [] from focusing on the actual presence or absence of *mens rea*, and . . . may easily slide into wider usage that opens up the jury to theories of defense more akin to justification") (internal quotation marks omitted).

The defendant in *Schneider* sought to introduce two experts to testify to the defendant's compromised judgement—an internist who would testify that the defendant was impaired by "misprescription and overprescription of medical drugs during the relevant period," and a psychiatrist who would testify that the defendant was impaired "based on chemical dependency and major depression with probable mania." *Schneider*, 111 F.3d at 199. In deciding the evidentiary issues, the Court of Appeals wrote the following:

> The evidence, as we have said, is of limited relevance: showing 'impaired' judgment might help piece out a lack of deceit claim but falls well short of sufficient proof. At the same time, the expert testimony offered here could easily mislead the jury into thinking that such a medical condition amounts to temporary insanity or ameliorates the offense. The instructions required here to guard the jury on this score would likely have gone very far to eliminate any use the evidence might otherwise have to the defendant.

*Schneider*, 111 F.3d at 203.

So it is here. Even if the Court were to find that some demonstration of impaired

---

[7] *See also Pohlot*, 827 F.2d at 890 ("[T]he Congressional prohibition of diminished responsibility requires courts to carefully scrutinize psychiatric defense theories bearing on mens rea. Psychiatrists are capable of supplying elastic descriptions of mental states that appear to but do not truly negate the legal requirements of mens rea. Presenting defense theories or psychiatric testimony to juries that do not truly negate mens reas may cause confusion about what the law requires.").

9

judgement might speak to the defendant's supposed inability to specifically intend to commit health care fraud and mail fraud conspiracy, any testimony offered by Dr. Gray would run the substantial risk of unfairly prejudicing the government's case or misleading the jury. If Dr. Gray were allowed to testify that the defendant's mental health impaired his capacity to conform his conduct to the law (an irrelevant issue), there is a significant risk that the jury would inappropriately apply that testimony to the separate and distinct question of whether the defendant acted with specific intent. The former issue (whether the defendant's impaired judgment impacted his ability to conform to the law) logically has no bearing on an actual issue at trial (whether the defendant acted with specific intent), and thus could only serve to mislead and confuse the jury, and waste the Court and the jury's time.

### D. Dr. Gray's Testimony Should be Excluded Pursuant to Rule 702

Assuming for purposes of argument that Dr. Gray's testimony is not excluded on any of the foregoing bases outlined in this motion, the Court should nevertheless exclude it pursuant to Fed. R. Evid. 702. Rule 702 permits an expert to testify if the expert's testimony is "based on sufficient facts or data," and "the testimony is the product of reliable principles and methods." Fed. R. Evid. 702(b) & (c). Here, Dr. Gray's testimony would fail to meet even the most basic requirements of Rule 702. *See Irvine v. Murad Skin Research Labs.*, 194 F. 3d 313, 321 (1st Cir. 1999) ("Absent adequate factual data to support the expert's conclusions his testimony was unreliable."). Dr. Gray did not even offer an opinion in his Report on the defendant's capacity to form specific intent, and even if he had done so, he identifies no facts upon which he could rely to support his (non-existent) conclusion. *See Downeast Ventures, Ltd. V. Washington Cty.*, No. 05-cv-87-B-W, 2007 WL 679887 at *4 (D. Me. Mar. 1, 2007) (barring plaintiff's accounting expert from offering lost profit projections on the grounds that the "*quantity* of data on likely

sales is *nil* in this case[;]" therefore, the expert's "projection of steel building construction revenue is unreliable and must be excluded from trial.") Far from being the product of reliable principles and methods, to the extent Dr. Gray even had an opinion concerning specific intent, any methodology he applied could be nothing more than a shot-in-the-dark, devoid as it would be of any factual underpinning. *See Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1022, 1031 (D. Kan. 2006) ("On this record, Finch's methodology is simply a house of cards."). There is absolutely no basis for Dr. Gray to testify that the defendant lacked the ability to form specific intent, let alone any basis for him to testify that the defendant lacked specific intent on *any legally relevant date*. With respect to the issue of specific intent, Dr. Gray's testimony, if allowed, would be spun from whole cloth.

Because Dr. Gray's testimony on the issue of the defendant's capacity to form intent, if permitted, would be contrary to the fundamental dictates of Rule 702, it should be excluded.

## CONCLUSION

Dr. Gray is in no position to offer evidence on whether the defendant had the specific intent to commit the acts charged in the operative indictment, nor does he even attempt to do so in his Report. The most that Dr. Gray can say is that the defendant's judgment was impaired and that such impairment diminished his capacity to conform to the law. That sort of generalized mental health assessment, (i) is prohibited by IDRA, (ii) is irrelevant to the issue of specific intent under Rules 401 and 402, (iii) carries with it the serious risks of prejudice and confusion under Rule 403, and (iv) is not properly grounded in sufficient facts and reliably applied

scientific principles per Rule 702.  As such, the Court should not permit Dr. Gray's testimony. [8]

Dated: February 13, 2017      Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

*/s/ Abraham R. George*
Abraham R. George, BBO# 668949
Maxim Grinberg, BBO# 667521
Assistant U.S. Attorneys
U.S. ATTORNEY'S OFFICE
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02110
(617) 748-3152
(617) 748-3287
abraham.george@usdoj.gov
maxim.grinberg@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: February 13, 2017      */s/ Abraham R. George*

ABRHAHAM R. GEORGE
Assistant U.S. Attorney

---

[8] Should the Court decline to grant the government's motion, the government reserves the right to seek a hearing to evaluate the substance of Dr. Gray's testimony outside the presence of the jury. *Pohlot*, 827 F.2d at 906.