Roger H. Gray, M.D.
112 Sargent Street
Newton, MA 02458
(617) 965-2713

December 8, 2016

Forensic Psychiatric/Criminal Responsibility Evaluation
Re: Fathalla Mashali
DOB: 11/19/54

I have been asked by Attorney Jeffrey A. Denner, who represents Dr. Mashali, to perform a psychiatric evaluation of Dr. Mashali to assess whether, to a reasonable degree of medical/psychiatric certainty, at the time of the alleged offense conduct Dr. Mashali suffered with a mental disease or defect which resulted in a lack of substantial capacity to know right from wrong.

I have prepared this report after interviewing Dr. Mashali for approximately 4 hours on 12/2/16, 12/6/16, and 12/8/16. I have spoken with his wife, Dr. Noha Elkadry Mashali, and reviewed her affidavit. I have reviewed the psychiatric evaluation by Dr. Allison Fife regarding the question of competence to stand trial, psychiatric records from Massachusetts General Hospital which includes psychiatric records by Drs. Stuart Beck and Jeff Huffman, MGH medical records to the present, Beth Israel Deaconess Medical Center records documenting bipolar disorder and seizure, Disability Evaluation by Dr. Richard Stellar, grand jury testimony, and discussing my findings with Attorney Denner and Dr. Mashali.

Dr. Mashali is charged with multiple counts of Health Care Fraud and Aiding and Abetting, Conspiracy to Commit Mail Fraud, and Money Laundering. The indictments indicate alleged offense conduct beginning February of 2011. Dr. Mashali has entered pleas of not guilty to all charges.

Brief History:

Dr. Fife's report includes information regarding Dr. Mashali's family of origin, current family, education, work experiences, and health. Rather than repeat that information, I will simply highlight particular aspects which I believe are important in the context of this evaluation. Dr. Mashali graduated Cairo Medical School and came to the U.S. for residency training in anesthesia. Soon after arriving in the U.S. at the age of 28, he suffered a significant back injury, required surgery, and by his description was extremely depressed. Unable to work or pursue residency training, he sought mental health treatment with a psychologist (a Dr. Parkash in Irving, Texas) and was prescribed anti-depressant medication by his primary care

1

physician. He recovered and was able to continue medical training in anesthesia. He met his wife and married in 1992. He pursued a successful career, apparently free of legal, professional, or personal problems. Dr. Mashali describes mental health problems prior to 2002 which involved episodes of severe depression and hypomania. Nonetheless, he did well and was able to maintain his practice and family life until being diagnosed with sarcoidosis in 2002 and beginning treatment with high doses of Prednisone which can cause multiple physical and mental problems. He describes starting a medical company in 2001, during a period of high energy, little need for sleep, and grandiosity. He told me, "I was in over my head....I started small and grew too rapidly...I couldn't keep up...I filed for bankruptcy in 2007 and 2008." During that period of time he was treated with Prednisone and continued to have episodes when he slept for several hours a day, felt unable to concentrate or function, felt extremely depressed (though not suicidal), and then would rather abruptly shift into a hypomanic state in which there was little need for sleep and he would work 18 or more hours a day. He said that the bankruptcy was both personal and corporate. After that company dissolved, and he began to "get back on my feet," he started another medical business in 2009.

In the course of taking this history, Dr. Mashali did not indicate difficulties in his personal life other than to describe the severe mood fluctuations between depression and hypomania; however, in my most recent interview with him, and at my inquiries, he indicated that both of his parents died of early onset Alzheimer's disease. His mother died in 2009, about 6 months after his father died. She had been diagnosed with Alzheimer's in 2005 or 2006, and his father was similarly diagnosed shortly thereafter. He said that due to his mental condition and professional difficulties (the bankruptcy of his first company), he was unable to attend their funerals.

As noted, he began another medical business in 2009 and says that he was determined to not repeat his previous errors and decided to keep the company small. Nonetheless, "I got in over my head again." He reports periods of not sleeping for a few days at a time, buying expensive cars ("6 luxury cars – I didn't need them"), working "24 hours a day," and then deciding to start a "high end audio-visual company." He notes that the company began in a building on his property but never produced anything and "it's empty." This failed project appears to have been initiated during a period of hypomania.

Dr. Mashali said that the depressive periods typically last 2-3 months and are typified by sleeping "sometimes 23 hours a day," loss of appetite with attendant weight loss, inability to think clearly, concentrate, or function at home or work, and extremely depressed mood. The hypomanic episodes often last 5-6 months and are typified by extravagant and unnecessary spending, starting projects he cannot complete (eg. the audio-visual business), working over 20 hours a day, and being irritable and angry.

2

Dr. Mashali's medical history is significant for sarcoidosis, treatment with Prednisone and now Remicade (methotrexate has been recently proposed), seizure, history of visual hallucinations (none currently), Vitamin B12 deficiency, gastroparesis, iron deficiency anemia, hypercholesterolemia, cardiac arrhythmia (atrial fibrillation), non-insulin dependent Diabetes Mellitus, a history of liver failure (now resolved), gastro-esophogeal reflux disorder, and cachexia.

Mental Status Examination:

Dr. Mashali arrived on time, neatly and professionally attired, with appropriate hygiene, using a walker for stability. We began interviews with the clarification that the purpose was forensic rather than for treatment, that any information he shared could be included in a report which would be submitted to the Court if he and his attorney so wished, that questions could be answered selectively if he wished, that he could terminate the interview at any time, and that he was not required to participate. He indicated that he understood these conditions, and in my clinical opinion he did understand them. He agreed to proceed and answered all questions openly.

His speech was clear, soft spoken, and of somewhat slower than normal rate. Speech was not pressured and prosody was within normal limits. His thinking was linear and logical. His major concerns involved his wish to prove his innocence of the charges against him. He denied thoughts of suicide, self-harm, homicide, or harm towards others. Dr. Mashali acknowledged struggling with episodes of depression and hypomania for about 3 decades, and described the impact of his physical deterioration, particularly resulting from having (and receiving treatment for) sarcoidosis with multiple compounding problems such as urinary and fecal incontinence, liver failure, weight loss, and generalized weakness, among others. He reported difficulty with sleep, appetite, energy, and concentration. (He has previously acknowledged to multiple individuals including medical personnel that he experienced vivid visual and auditory hallucinations.) He denied current hallucinations of any type, and there was no evidence of delusions; however, he acknowledged a life-long struggle with "paranoia" which he explained meant a persistent mistrust of others. He described first identifying this problem when he began psychiatric treatment about 30 years ago in Texas. This mistrust did not rise to the level of flagrant delusional beliefs in organized conspiracies, but his mistrust is quite deep, pervasive, and resistant to reasonable challenge. Dr. Mashali described his current mood as depressed and anxious. His affect was mood congruent and appropriate to content. His cognition was grossly intact in terms of immediate recall, abstraction, and fund of knowledge; however, there were times that some impairment of recent and remote memory was evident. During the interviews, there were times when he appeared to have difficulty with concentration, especially related to feelings of tiredness and lethargy. Insight was adequate in terms of his understanding of the charges against him and the need of mounting a defense. Judgment was adequate in that context; he insisted on his

3

innocence and minimized the extent and import of evidence against him. Additionally, his judgment, vis-à-vis his decision to travel to Egypt and attempt to facilitate either a capture of or a peace making confrontation with a former medical school classmate and now member of Al Queda, would indicate significantly impaired judgment, at least episodically. [Please note later discussion regarding the matters of insight and judgment related to Dr. Mashali's understanding of the evidence against him.]

Discussion:

Dr. Fathalla Mashali is a 61 year old physician who faces extensive and serious charges which are alleged to have taken place beginning in 2011. He has no known history of prior legal charges or antisocial behavior. He is married and has 4 children ranging in age from 5 to 18. Dr. Mashali has a lengthy history of mental illness, best described as Bipolar Type II although he has also been diagnosed with Major Depressive Disorder and Bipolar Disorder Type I with psychotic features. Symptoms of depression alternating with periods of hypomania began about 30 years ago. By his own description, that of his wife, and the various medical/psychiatric records, there have been significant fluctuations in mood, functioning, cognition, and capacities to manage activities of daily living. He first sought and received psychological treatment from a Dr. Prakash in Irving, Texas over 30 years ago, at which time he was prescribed medication for depression by his primary care physician. After treatment of about 2 years, he was able to return to work and was ultimately able to pursue a profession in medicine, having originally earned his medical degree in Egypt with the subsequent need to meet U.S. requirements, including completion of a residency program.

Dr. Mashali's mental health fluctuated over many years; however, he appeared able to manage, despite these challenges, until his physical health deteriorated in 2002-3. Since that time, there have been multiple challenges to both physical and mental health and capacity to meet the demands of personal and professional functioning. He has been psychiatrically and medically hospitalized, treated with antipsychotic medication, mood stabilizing medication, anticonvulsant medication, treated with medications such as Prednisone (a steroid medication prescribed for sarcoidosis), has experienced life-threatening liver failure, at least one seizure, diabetes, cardiac arrhythmia, and polyneuropathy. The several medical factors which could impair his mental functioning include sarcoidosis, treatment with Prednisone, B12 deficiency, cachexia, and anemia. It is significant that his parents were diagnosed with early onset Alzheimer's disease and died from that disease shortly before the alleged offense conduct.

I have discussed Dr. Mashali's history and current case with Attorneys Jeffrey Denner and Joseph Keller. They indicate that there are thousands of pages of documentation and witness statements which are often adverse to Dr. Mashali. I

have seen a portion of this information and appreciate the enormity of the task they and Dr. Mashali face if he chooses to challenge the validity of the evidence.

Conclusion:

In my opinion, Dr. Fathalla Mashali suffers with a mental disorder best characterized as Bipolar Disorder, Type II, severe (DSM-V # 296.89) which is severely compounded by multiple medical conditions, particularly (though not exclusively) sarcoidosis with its accompanying treatment. Furthermore, I believe that Dr. Mashali has suffered with these conditions for several years prior to the alleged offense conduct, during the time of the alleged offense conduct, and continues to the present time. In my opinion, his mental illness does not rise to the meet the full Federal criteria for lack of criminal responsibility in so far as he can discern right from wrong; however, it is also my opinion his mental illness and the mental components of medical illnesses at the time of the alleged offense conduct profoundly impaired and diminished his capacity to conform his behavior to the requisites of the law, as per McHoul criteria. Finally, I am concerned that both his mental and medical illnesses presently impair his ability to make realistic assessments of the defense options available to him, particularly options involving plea bargaining. Although he understands the charges against him, the roles of the participants in the legal system, and intellectually understands that he has defense options, he appears incapable of appreciating the extent of evidence against him; therefore, I believe that his competence or capacity to effectively and realistically assist his attorneys in his own defense is, as a practical matter, virtually non-existent at this time.

Respectfully submitted,

Roger H. Gray, M.D.