**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO: 14-CR-10067 |
| | ) | |
| FATHALLA MASHALI | ) | <u>**UNDER SEAL**</u> |

<u>**GOVERNMENT'S MEMORANDUM IN SUPPORT OF THE MOTION**</u>
<u>**FOR PRETRIAL DETENTION**</u>

The United States of America hereby moves to detain the defendant, Fathalla Mashali ("Mashali"), under 18 U.S.C. § 3142(f)(2)(A) pending trial. As grounds for this motion, the government states that there is a preponderance of the evidence that by intentionally refusing proper nutrition and medical treatment Mashali poses and will continue to pose a significant suicide risk. Consequently, there is no condition or combination of conditions that will reasonably assure his appearance for trial.

<u>**FACTS**</u>

The defense moved for a mental competency evaluation on December 2, 2015 [D. 179]. The parties chose, and the Court appointed, Dr. Alison Fife[1] as a forensic psychiatrist to evaluate Mashali's competence to stand trial. The government sought and obtained multiple court orders to acquire Mashali's medical records for Dr. Fife's review. Until the receipt of

---

[1] Dr. Fife's CV is attached as Ex. 1.

these medical records, the government relied entirely on counsel's representations concerning Mashali's health, including the suggestion that Mashali's rapid health deterioration and significant weight loss were attributable to Mashali's chronic medical condition of sarcoidosis.  The medical records, Dr. Fife's interpretation of those records, and her subsequent interactions with Mashali, however, demonstrate that Mashali has been intentionally refusing proper nutrition and treatment to avoid trial and that he will continue to do so.

    As the Court is aware, Dr. Fife first met Mashali on March 7, 2016. [D. 208 at 1 (under seal)].  Dr. Fife subsequently informed the government that "Dr. Mashali presented as lethargic and unable to participate in the evaluation.  I do not at this time know the reason for the lethargy and his lack of participation." [Id.].  Dr. Fife also informed the government that she had told defense counsel and Mashali that "Mashali should be in a hospital, ideally a medical psychiatric unit like Blake 11 at MGH." [Id. at 2]  According to Dr. Fife, however, Mashali declined to follow her advice.  [Id.].  Even at the first meeting with Mashali, Dr. Fife already identified "refusal to eat," "[u]ndiagnosed malignancy," and "[f]eigning/inducing symptoms" as potential causes for Mashali's lethargic appearance and demeanor.  [Id. at 2-3].

Eventually, on March 24, 2016, per the Court's order, Mashali voluntarily committed himself to the locked psychiatric ward at Massachusetts General Hospital ("MGH").  On April 14, 2016, MGH discharged Mashali.  On April 26, 2016, Dr. Fife submitted her competency report ("Competency Report")[2] finding Mashali competent to stand trial.

According to the MGH discharge notes ("Discharge Notes"):

> The patient is at _chronically elevated risk for harm_ to self or others compared with general population due to psychiatric illness, including depression; however, patient is protected by committed outpatient treaters and supportive family.  Patient is motivated to continue outpatient psychiatric treatment.  Patient is able to articulate a plan to reach out for help from providers and family if symptoms worsen and to go to an emergency room or call 911 if feeling unsafe.  Therefore, the patient is not at _acutely_ elevated risk of harm _at this time_ and is appropriate for outpatient level of care.[3]  (emphasis added).

MGH diagnosed Mashali with Unspecified Mood Disorder with Psychotic features, Antisocial and Narcissistic Personality Disorder, and malingering, among other things. [Ex. 3]. According to Dr. Fife's Competency Report, Mashali's treating physician at MGH "felt [that Mashali] was safe to discharge to home _as long as_ he continued his medication as prescribed,

---

[2] Competency Report is attached as Exhibit 2, thereafter "Ex. 2."
[3] MGH Discharge Notes are attached as Exhibit 3, thereafter "Ex. 3."

3

nutrition plan, and outpatient follow-up." [Ex. 2 at 7] (emphasis added). Dr. Fife noted that MGH had also opined that Mashali "appeared to be malingering to avoid outside court process as evidenced by inconsistent presentation, only intermittent or minimal compliance with medical recommendations, elaboration of medical problems, and overt disdain for the legal process." [Ex. 2 at 7].[4]

Dr. Fife ruled out in her Competency Report the connection between Mashali's medical condition and his apparent "lethargy," pointing out that various tests, including CT and MRI scans of the brain, were "unremarkable." [Ex. 2 at 6]. On the other hand, Dr. Fife stated that Mashali "has very poor nutrition with food refusal alternating with overeating. In my opinion this is volitional . . . ." [Ex. 3 at 9]. Dr. Fife also referenced MGH's finding that Mashali was "withholding nutrition" and that he had invalidated cognitive assessment and neuropsychiatric testing administered by MGH. [Ex. 2 at 7, 10]. Dr. Fife also stated that Mashali:

> is choosing not to demonstrate his capacities to stand trial, specifically by not working with his attorney on his defense, so as to avoid trial. He is doing it both through deliberate and on going poor

---

[4] The reference to "outside court process" probably pertains to the judicial determination of whether Mashali should be civilly committed to MGH under Mass. Gen. Laws rather than to the instant criminal case.

4

> self care, including poor oral intake of food and taking to bed so as to become deconditioned and weak.
>
> ***
>
> Dr. Mashali's records since his arrest illustrate progression of weight loss and malnutrition resulting in failure to thrive, physical deconditioning from low activity, and avoidance of the legal process.

[Ex. 2 at 11].

According to Dr. Fife, when she asked Mashali if he was giving up as a way to avoid trial, he responded: "No- I don't want to live in pain"; "I strongly believe people should die in comfort." [Ex. 2 at 9]. Mashali also said, "I think this is the end. They should give me some pain medication." [Ex. 2 at 8]. According to MGH Discharge Notes, Mashali stated that his life had already ended, that he wanted to be on hospice for pain medications, that he did not care if he died, and that he wanted to be comfortable. [Ex. 3 at 2]. MGH Discharge Notes also state that Mashali "presented with . . . low energy, and an intense passive death wish, repeatedly asking to be placed on hospice so that he could 'just be comfortable.'" [Id. at 5].

Dr. Fife mentioned in her Competency Report that Mashali's self-imposed starvation has been an ongoing problem: "Self-starvation resulting in protein and calorie malnutrition and confabulation of symptoms have been noted over the past 2 to 3 years." [Ex. 2 at 6]. MGH Discharge Notes document that

5

Mashali demanded a "[p]alliative care" consultation and threatened a "hunger strike" if it was not provided to him. [Ex. 3]. MGH nevertheless declined a palliative care consultation because Mashali did not have a "life-limiting illness." [Ex. 3].

On April 27, 2016, Dr. Fife filed a separate letter with the Court, expressing her "concerns about Dr. Mashali not complying with medical and nutritional protocols as he awaits trial." [Ex. 4]. In the letter, Dr. Fife opined that:

> Dr. Mashali has been on a path of extremely poor self-care, and self-imposed starvation since his arrest. If he remains at home, as he has awaiting trial, we cannot be assured he will follow his treatment plan . . . . I have little to no doubt that he will continue to deteriorate at home as he has been deteriorating since his arrest. In that setting, his weight will continue to drop and his health deteriorate. He has said he is not suicidal, but this may change without notice . . . . Dr. Mashali would be best served in a monitored setting where his safety, nutrition and medication adherence can be observed around the clock.

[Ex. 4]. Dr. Fife's opinion appears to be supported by Mashali's lengthy medical records. [See D. 212, Government's Supplemental Memorandum to the Government's Motion for a Hearing Re Status of Defendant's Competency Evaluation (under seal)].[5]

---

[5] The sealed docket is not available to the government, but the undersigned counsel believes this document was docketed as D. 212.

6

**ARGUMENT**

Title 18, United States Code, Section 3142 permits the detention of a defendant awaiting trial where, after a hearing, a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ."  18 U.S.C. § 3142(e)(1).  The government bears the burden of establishing that the defendant poses a risk of flight, by a preponderance of the evidence.  *See United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986); *see also United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991); *United States v. Pitts*, No. 09-204, 2010 WL 3303800, *4 (W.D. Pa. Aug. 19, 2010); *United States v. Say*, 233 F. Supp.2d 221, 223 (D. Mass. 2002).  In making this determination, the Court must consider the factors listed in the Bail Reform Act.  *See* 18 U.S.C. § 3142(g) (listing the following factors for consideration:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release).

Several courts have detained defendants who pose a suicide risk or risk related to this concern pending trial.  *See United States v. Metz*, No. 12-M-01193, 2012 WL 6632501 (W.D. N.Y. Dec.

12, 2012); *see also United States v. Wasendorf*, No. 12-CR-2021, 2012 WL 4793366 (N.D. Iowa Oct. 9, 2012); *United States v. Krueger*, No. 13-20242, 2013 U.S. Dist. LEXIS 96053, *6 (E.D. Mich. July 10, 2013) (concluding that § 3142(g)(4) requires consideration of defendant's mental condition and may require the court to consider suicide risk in the context of risk of non-appearance); *United States v. George-Rodriguez*, No. 13-CR-378, 2013 WL 3246114, *6 (D. Utah June 26, 2013) (construing § 3142(g)(4) as permitting the court to consider defendant's mental health and suicide risk in the context of possible non-appearance, but questioning whether suicide risk alone could justify detention); *United States v. Robinson,* No. 12-0089, 2012 WL 5863636, *4 (N.D. Iowa Nov. 19, 2012) (detaining defendant on dangerousness grounds because defendant had threatened others and had recently said on Facebook that charges might prompt him to kill himself); *United States v. Knight*, 12-CR-21-J-32, 2012 WL 3583440, *1-*2 (D. N.H. Aug. 14, 2012) (ordering detention of defendant on dangerousness grounds because defendant was mentally unstable, had repeatedly attempted suicide, and had a record of violence).

For example, in *United States v. Metz*, the defendant was charged with possession of child pornography. No. 12-M-01193, 2012 WL 6632501, *1. After a search warrant was executed at his home, Metz unsuccessfully tried to commit suicide by parking his

car on train tracks. *See id*. He later denied trying to kill himself, but the government nonetheless moved to detain him based on the potential suicide risk. *See id*. at *2. Following the detention hearing, the court readily agreed with the defendant that the Bail Reform Act was not intended to authorize detention based on a suicide risk *per se*. *See id*. at *2-*3 (noting that § 3142(e)(1) requires danger to "any *other* person or the community"). But the court went on to hold that detention was nonetheless justified because, in light of the suicide risk, there were no conditions of release that could reasonably assure the defendant's appearance in court — a fact the court was compelled to consider under §§ 3142(b), (c)(1), and (e)(1). *See id*. at *3-*4. The court also separately opined that suicide risk was a risk of flight, and so justified a motion for detention – whether by the government or by the "judicial officer" – under § 3142(f)(2)(A). *Id*. at *4-*5.

Other decisions are in accord. For example, in *United States v. Wasendorf*, the defendant was charged with massive investment fraud. No. 12-CR-2021, 2012 WL 4793366 at *1-*2. Like here, the evidence against the defendant was overwhelming, including a note, which the defendant wrote before a prior suicide attempt, in which he made incriminating statements. *See id*. at *2-*3. After Wasendorf entered a plea agreement, the government moved to revoke bond and detain the defendant. The

9

magistrate judge denied the motion, but the district court reversed following the defendant's guilty plea pursuant to 18 U.S.C. § 3143. *See id*. at *3. In doing so, it observed that the defendant faced significant prison time and that his suicide attempt "was indicative that, at one point, Defendant was not willing to face the consequences of his actions." *Id*. at *3.

Mashali should be detained as a risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A). *See* 18 U.S.C. § 3142(e)(1) (authorizing detention where no combination of conditions will ensure later appearance); *see also Metz*, No. 12-M-01193, 2012 WL 6632501 at *4 (detaining defendant and rejecting defense argument that "risk of suicide is not risk of flight"); *United States v. Cody*, 498 F.3d 582, 592 (6th Cir. 2007) (stating that "suicide is a form of flight"). The information provided to the Court in this Motion as well as in the prior government's filings referenced in this Motion establishes by a preponderance of the evidence that Mashali's declining health is directly attributable to his intentional self-starvation and refusal to follow up on proper treatment with the goal of avoiding the trial in this case. MGH discharged Mashali on the assumption that he would follow up on his outpatient care, but his prior medical records and interactions with Dr. Fife show that without constant medical observation Mashali will continue on his suicidal path. At this juncture, placing Mashali in the custody

10

of the Attorney General where he can be constantly monitored for the signs of malingering and refusal of nutrition and medical treatment is the only viable way to assure Mashali's appearance for trial.

WHEREFORE, the government respectfully requests that the Court detain Mashali pending trial for the reasons set forth above.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: /s/ Maxim Grinberg
MAXIM GRINBERG
Assistant U.S. Attorney
617-748-3287

**CERTIFICATE OF SERVICE**

I hereby certify that this document and the attached exhibits will be served electronically on Jeffrey Denner, Esq., opposing counsel of record.

/s/ Maxim Grinberg
MAXIM GRINBERG
Assistant United States Attorney

Date: April 27, 2016