**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA    )
    )
      v.    )    CRIMINAL NO: 14-CR-10067
    )
FATHALLA MASHALI    )

### GOVERNMENT'S SUPPLEMENTAL MOTION FOR DETENTION

The United States of America hereby supplements its July 26, 2017 motion for detention under 18 U.S.C. § 3143(a)(1) pending sentencing [D.344].

On July 28, 2017, the U.S. Probation Office obtained a letter from the defendant's current treating psychiatrist at the Massachusetts General Hospital ("MGH") stating that the defendant "manufactured" the suicide event "in an attempt to prolong his hospitalization." According to the letter, the defendant "has no issues with his mobility," is able to "get[] up on his own without assistance and is able to ambulate on his own." Although the defendant initially "refus[ed] to take any oral intake and was dehydrated," he is apparently improving his nutrition. The defendant "has no issues swallowing or eating on his own" and "has no other specific medical needs at this time." The letter concludes that the defendant's behavior is consistent with "malingering."

It now has been more than eighteen months since the defendant moved for a competency determination in December 2015 [D.179]. It

has been over a year since the government's April 27, 2016 motion seeking to detain the defendant based on his malingering and suicidal ideation [D.230].[1]  It has been over a year since Dr. Alison Fife, the court-appointed expert, predicted that if the defendant remained in a non-custodial setting he would pursue a course of intentional malnutrition and lack of self-care to evade the legal process.  It has also been over a year since Dr. Stuart Beck, the defendant's treating psychiatrist at MGH, informed the Court that the defendant engaged in self-inflicted harm, manipulated providers, and made up symptoms to avoid the legal process.  During this period, the Court afforded the defendant considerable leeway to avoid custody and rejected multiple calls from the government and Dr. Fife to detain him to forestall the very predicament before the Court.

After months of scheduling and preparing for a three-day sentencing hearing, to include the testimony of two experts and attendance by the defendant's victims, the defendant thwarted the sentencing hearing in a matter of days.  His purported recent maladies began immediately after the government filed its sentencing memorandum on July 13, 2017.  As has happened on other multiple occasions during these proceedings, the government learned of the defendant's hospitalization at MGH from defense

---

[1] The Court never ruled on this motion.

2

counsel days after it occurred, and even that information was lacking in clarity and accuracy. At no time prior or during the hearing on July 25, 2017 did counsel inform the Court or the government of the defendant's suicide attempt at MGH or the treating physician's observations that the defendant was malingering. Whether counsel was simply unaware of that information is of no moment to the issue at hand. It is significant, however, that neither the Court nor the government had accurate information, all the while considering the defendant's motion for a competency hearing. Thus, the Court once again found itself in the untenable position of assessing the hospitalization of a manipulative defendant based on inaccurate information.

Despite the defendant's now two motions for a competency determination, and notwithstanding the defendant's burden to establish the lack of competency, the defendant has not produced a single medical record to the government during this year-and-a-half period, nor has the Court ordered the defendant to produce any such records despite the government's request that he do so. Rather, the government has had to obtain the defendant's medical records during this lengthy period, often on very short notice or none at all, as the defendant bounced from one medical setting to another.

The defendant's latest salvo of expert reports is meritless. The report Dr. Roger H. Gray filed before the trial date did not even mention the term "malingering." His subsequent report, dated July 20, 2017, at least acknowledges that "Dr. Mashali is motivated by self-interest and exaggerates some of his problems in the hopes of ameliorating the consequences of actions." But even this report lacks the professional discipline observed in Dr. Fife's and Dr. Martin Kelly's (government's expert) reports. For example, Dr. Gray states that "[t]he attempts to defraud were so poorly executed as to provide easy detection. These decisions are evidence of failures in executive functioning, i.e., the capacity to effectively complete tasks." [D.341-1]. He also opines that, "[i]f these disorders were not present, and if Dr. Mashali was simply a smart and dishonest man intent on committing terrible medical practices and fraud, then he could have easily done this successfully and without detection." [D.341-1]. The Court should quickly brush aside this speculative non-medical prattle.

The July 20 and 21, 2017 reports by Dr. Leslie Vogel are equally unavailing. [D. 340-1 and 341-1]. Dr. Vogel seems to have fallen under the defendant's manipulative spell, as did Dr. Gray, accepting the defendant's representations at face value—hardly the careful and competent work of a forensic psychiatrist evaluating a criminal defendant who was determined to be malingering on multiple occasions, including by this Court. If

the Court retains any doubt about the shortcomings of these reports, it needs only to review once more the letter obtained by the U.S. Probation Officer from the defendant's current treating psychiatrist at MGH.

The issue before the Court is straightforward. If there is to be an end to this proceeding and justice served for the victims of the defendant's fraud, both alive and dead, the defendant must be detained pending sentencing under 18 U.S.C. § 1343. The alternative is the continuation of the defendant's endless attempts to undermine the legal process that emerge only right before a critical stage of the proceeding, such as the competency hearing, trial, and sentencing. The detention under § 1343 may just save the defendant's life, too. The Court indicated that such a custodial setting is inhumane, at least as applied to the defendant. To the contrary: such a setting, even at a local jail, will allow medical personnel to monitor the defendant's nutritional intake and compliance with medication around the clock and transport him to an emergency room, if necessary, as was done while the defendant was in pretrial detention at the Plymouth County House of Corrections. Such a setting will serve as one source for all pertinent medical records and will allow the Court to learn information timely, objectively, and directly, rather than from counsel. Finally, detention will assure finality for the victims.

At this point, the defendant is housed on an unlocked medical floor at MGH. As far as the government understands, nothing prevents the defendant from physically leaving the hospital. In any event, the designation to the Bureau of Prisons under 18 U.S.C. § 4241 may take weeks, and there is no assurance that the defendant will not be released from MGH before then. The only assurance of finality, and perhaps preservation of the defendant's life, lies in the immediate issuance of a warrant to effectuate detention under 18 U.S.C. § 1343.

Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

By: /s/ Maxim Grinberg
MAXIM GRINBERG, BBO# 667521
ABRAHAM R. GEORGE, BBO# 668949
Assistant U.S. Attorneys

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By: /s/ Maxim Grinberg
MAXIM GRINBERG
Assistant U.S. Attorney

Date: July 28, 2017