UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 14-10067-RWZ

UNITED STATES OF AMERICA

v.

FATHALLA MASHALI

ORDER

February 7, 2018

ZOBEL, S.D.J.

This is the court's second competency determination of defendant Fathalla Mashali. Formerly a licensed physician who operated several pain clinics in New England, defendant has pleaded guilty to charges of healthcare fraud, conspiracy to commit mail fraud, and money laundering. (Docket # 131 (Second Superseding Indictment), Docket # 329 (Plea Hearing).)

In late 2015, defendant's counsel moved for a competency hearing pursuant to 18 U.S.C. § 4241. The court allowed that motion, and on September 9, 2016, after several evaluations and an evidentiary hearing, found defendant competent to stand trial. Trial was scheduled to commence on March 20, 2017, but on March 1, 2017, defendant moved for a Rule 11 hearing. At the March 2 plea hearing, defendant denied knowledge of the fraud charged, although he acknowledged his responsibility for the

clinic's activities. As a result, the court did not accept his plea and continued the hearing. At a second plea hearing two weeks later, defendant explained in some detail his regimen of outpatient mental health and medical treatment, acknowledged his guilt, and stated that he fully understood the proceedings. Defendant explicitly admitted knowledge of the healthcare fraud scheme and of the scheme's illegality. He acknowledged that he had instructed his employees to bill incorrectly and submit claims for work not performed. The court accepted his plea.

A sentencing hearing was scheduled on July 26, 2017. On July 20, 2017, defendant's counsel moved for a competency determination. At the hearing on that motion, the government joined the request for a competency ruling, but requested that defendant be committed to the Bureau of Prisons ("BOP") for such mental evaluation. The court allowed both motions. The BOP issued its report on January 8, 2018 (Docket # 355), and an evidentiary hearing to determine competency for sentencing followed on January 23, 2018. At the hearing, defendant moved orally and without counsel's support to withdraw his guilty plea, which was denied. Below are my findings of fact and conclusions of law with respect to defendant's competency for sentencing.

**I.     The Record**

The sole witness at the hearing was Dr. Shawn Channell, a forensic psychologist and the author of the January 2018 BOP report evaluating defendant's competency. In addition to Dr. Channell's testimony and report, the parties agree that the record before me consists of several earlier reports and findings as follows:

- Report of the government's expert Dr. Martin J. Kelly, dated February 10, 2017 (Docket # 310);

- Reports of defendant's expert Dr. Roger H. Gray, dated December 8, 2016, July 19 and 20, 2017 (Docket # 341-1);

- Reports of defendant's expert Dr. Leslie Vogel, dated July 20 and 21, 2017 (Docket # 341-1);

- Findings of fact contained in this court's previous determination of defendant's competency (Docket # 276), and any materials relied upon therein, including the record of the June 30, 2016 competency hearing.

## II. Findings of Fact

I analyze each expert's findings separately.

### A. Dr. Martin J. Kelly

As the government's expert, Dr. Kelly found defendant competent to stand trial as of February 2017. Before reaching that conclusion, Dr. Kelly conducted four and a half hours of psychiatric interviews of defendant in January 2017 and reviewed defendant's medical and legal records. Throughout the course of these interviews, defendant "repeatedly stressed his innocence and that he was unaware of any problem with his practice until authorities became involved and that it was never his intention to defraud the government nor did he engage in any fraudulent activity." (Docket # 310, at 4.) I credit Kelly's characterization of defendant as a person with "superior intellectual abilities" who "clearly understands his legal jeopardy and has been active throughout the legal process in pursuing his self-interest." (Id. at 8.)

### B. Dr. Roger H. Gray

Defendant's expert, Dr. Gray, reached the opposite conclusion after evaluating defendant in December 2016 and July 2017. (Docket # 341-1, at 9, 14.) He conducted nearly five hours of psychiatric interviews of defendant, reviewed his medical and legal records, and diagnosed defendant with "disabling dementia and psychotic depression."

(Id. at 5.) Addressing the issue of malingering raised by other evaluators and physicians, Dr. Gray concurred that defendant was "motivated by self-interest and exaggerates some of his problems in the hopes of ameliorating the consequences of his actions; however, even his malingering behavior is inept and symptomatic of the underlying neurologic and psychiatric deterioration." (Id. at 7.) Dr. Gray did not, however, administer objective testing to evaluate malingering. Because his reports emphasized defendant's mental state at the time of his offense conduct and failed meaningfully to assess his understanding of the charges against him and ability to assist his counsel, they are of limited utility to the court's present determination.

### C. Dr. Leslie Vogel

Dr. Vogel, another defense expert, opined in July 2017 that defendant was not competent. (Docket # 341-1, at 16.) Dr. Vogel interviewed defendant and his wife over the course of five to six hours and reviewed the relevant legal and medical records. In her view, defendant's sarcoidosis "triggered a gradual, insidious, multi-domain disintegration in judgment, insight, memory, and physical capacity." (Id. at 17.) She administered no objective testing to evaluate malingering, and shared Dr. Gray's assessment of that behavior, which she characterized as "overly obvious and unsuccessful, and more in the line of his grandiosity. More importantly, his misguided malingering attempts in no way detract from the profound seriousness of his actual disease process; and in fact support it." (Id. at 19.) Dr. Vogel further concluded that "suspicions of his 'faking his symptoms' were directly countered by medical testing, confirming gastroparesis and orthostatic hypotension." (Id.)

4

### D. Dr. Shawn E. Channell

As the court's expert, Dr. Channell concluded in January 2018 that defendant is competent. (Docket # 355, at 25.) His report is based on the most comprehensive evaluation of defendant to date based on five months of observation and inpatient treatment at FMC-Devens. During that time, Dr. Channell consulted with defendant's treating psychiatrist and nurses, oversaw administration of three psychological tests, interviewed defendant for between seven and eight hours, and reviewed his medical and legal records. Dr. Channell adopted as his testimony the contents of his report, entered as Exhibit 1 at the hearing, and was examined by both counsel. I find him a credible witness uniquely positioned to assess defendant longitudinally. Because his report is also the most recent, and the only one prepared by a neutral expert, I give it controlling weight.

Dr. Channell testified that defendant does not have dementia, because dementia is chronic and progressive with an overall downward trajectory. Defendant's memory problems, conversely, have been selectively inconsistent in a manner more characteristic of malingering. Brain imaging in November 2014 revealed none of the abnormalities — structural lesions, hippocampal atrophy, or reduced brain volume — associated with dementia or Alzheimer's disease. (Docket # 355, at 18.) Around the same time, Brigham and Women's Hospital noted no neurologic findings of neurosarcoidosis. (Id. at 9, 18.)

Similarly, Dr. Channell testified that defendant does not suffer from bipolar disorder. Its onset typically occurs in a patient's adolescence or early adulthood, whereas defendant's medical record contains no evidence of symptoms or mental

5

health treatment prior to 2013, when defendant lost his medical license at age 59. (Id. at 12.) His first documented mental health treatment, beginning weeks after the suspension of his Rhode Island medical license and days after his agreement to cease medical practice in Massachusetts, lasted only three months and yielded a diagnosis of Adjustment Disorder, "characterized by the onset of emotional or behavioral symptoms in response to an identifiable stressor." (Id. at 17.)

Dr. Channell summarized defendant's performance on three psychological tests. On the first, the Wechsler Abbreviated Scale of Intelligence – Second Edition ("WASI-II"), defendant scored in the extremely low range of functioning, associated with mild intellectual disability. (Id.; Docket # 361.) Dr. Channell explained that although depression might lower a WASI score, it would not do so dramatically, and he opined that defendant's score of 69 reflects neither his demonstrated intelligence nor true ability.

Dr. Channell also administered the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") and the Test of Malingered Memory ("TOMM"), and explained that he uses these instruments only when indicators suggest the possibility of malingering. Defendant's MMPI-2 validity profile showed "gross exaggeration of mental health symptoms, including significant endorsement of psychotic symptoms which are atypical of a genuine clinical sample." (Docket # 355, at 16.) The TOMM is sensitive to feigned impairment but insensitive to neurological impairment, such that even people with severe dementia, traumatic brain injuries, and cognitive deficits achieve an average score of 45 out of a possible 50 points. Defendant's scores of 19, 23, and 23, in Dr.

Channell's view, furnish "unequivocal" evidence that defendant is malingering both cognitive and psychological deficits. (Id. at 17, hearing testimony.)

Noting Dr. Gray and Dr. Vogel's July 2017 reports of defendant's dramatic deterioration, Dr. Channell also reviewed a letter written by Dr. Bruce Wininger of Massachusetts General Hospital ("MGH"), where defendant was hospitalized at that time. (Docket # 355, at 13.) Dr. Wininger observed that defendant's first reports of suicidal ideation and his attempt to hang himself followed the news that he would likely soon be discharged. (Id.) Moreover, defendant presented with complaints of worsened depression, command auditory hallucinations, lack of appetite, and falls, but while hospitalized resumed eating and complained of no further hallucinations. (Id.)

Defendant's self-reports of auditory hallucinations while at FMC-Devens are inconsistent with the observations of Dr. Channell and medical providers. (Docket # 355 at 14–16.) Defendant claimed mental health treatment for hallucinations and bipolar disorder beginning thirty years ago, but has to date produced no record of any such treatment prior to the loss of his medical license in 2013. (Docket # 355, at 6, 17.)

Defendant's weight fluctuated while at FMC-Devens, and he sometimes refused meals. In September 2017, a treatment provider observed defendant "trying to move the scale to look like he weighs less" and suggested that he was malingering. (Docket # 355, at 14.) The next month, his treating physician similarly noted that defendant "appears to be fasting in order to obtain some type of secondary gain." (Id. at 15.)

In his interviews with Dr. Channell, defendant reported having been charged with Medicare fraud. Disavowing memory, understanding, or responsibility for the charged conduct, defendant expressed the belief that he would "go home" whether found guilty

7

or not guilty. When asked about a plea of not guilty by reason of insanity, defendant stated, "I guess if you don't remember and you can't function . . . [you] go home [or] to the hospital." (Docket # 355, at 22.) Defendant steadfastly maintained both his lack of memory and his innocence. Asked how both could be true, he responded:

> I remember that I didn't do it. All I remember is being a physician. I really doubt that I did anything. I never woke up and decided I would defraud someone today. That would never happen. Maybe those people want to get themselves off the hook, so they throw some responsibility on me . . . I didn't do any work with Medicare, all that work was done by my office . . . I didn't even take a salary. There was not enough money to make a salary . . . I didn't sign off on anything. The people who billed asked the nurses. The nurses document the procedures and signed off. It was a very big practice with over 100 people. I didn't even have access to the [billing] software . . . I never understood how they billed.

Id. at 23.

Dr. Channell concludes that defendant appears to have suffered from Major Depressive Disorder since the loss of his medical license in 2013. Defendant's depressive symptoms, in his view, do not significantly interfere with his understanding of the nature and consequences of the legal proceedings against him or his ability to assist in his defense. Regarding other mental health, medical, and cognitive impairments, Dr. Channell opines that defendant is malingering in an effort to manipulate the outcome of his legal proceedings.

### III. Conclusions of Law

The criminal trial of an incompetent defendant violates the Due Process Clause of the Fourteenth Amendment. Cooper v. Oklahoma, 517 U.S. 348, 354 (1996). "A defendant may not be put to trial unless he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... [and] a rational as well

8

as factual understanding of the proceedings against him.'" Id., quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam). The obligation to determine competency to stand trial persists through the sentencing phase. United States v. Ahrendt, 560 F.3d 69, 74 (1st Cir. 2009). In the event that a defendant's competency is questioned, a court must order a competency hearing on motion from either party, or sua sponte. 18 U.S.C. § 4241.[1]

The required understanding of the proceedings "is of the essentials—for example, the charges, basic procedure, possible defenses—but not of legal sophistication." United States v. Brown, 669 F.3d 10, 17 (1st Cir. 2012) (citations omitted). Moreover, the presence even of severe mental illness does not establish incompetency in a defendant otherwise able to understand the proceedings. See United States v. Widi, 684 F.3d 216, 221 (1st Cir. 2012). Here, it is undisputed that defendant suffers from serious depression. There is also considerable evidence that he has difficulty accepting the consequences of his offense conduct. Neither, however, renders defendant unable to understand the proceedings, and indeed his conduct demonstrates just the opposite: that he grasps the implications of critical phases of the case and seeks to manipulate their outcomes. This was clearly apparent in his recent attempt to withdraw his plea. Cf. Widi, 684 F.3d at 220 ("district judge may take into account [her] own observations of the defendant" in determining competency).

---

[1] I note that the statute does not clearly allocate the burden of proof, that the First Circuit has not decided the issue, and that other circuits are split. Cf. United States v. Patel, 524 F. Supp. 2d. 107, 110–114 (D. Mass. 2007) (collecting cases). Nevertheless, the point is immaterial here because although the parties agree the defendant bears the burden of establishing his incompetency by a preponderance of the evidence, the result in this case would be the same even were the government required to prove defendant's competence by a preponderance.

As to defendant's ability to assist counsel, his counsel contends that defendant is unable to assist in differentiating legitimate from fraudulent billings to make the correct loss calculation, which in turn determines the guideline range for sentencing. Volitional refusal to assist counsel is not the same, however, as <u>inability</u> to do so, and only the latter is relevant in determining competency. See, e.g., <u>United States v. Kiderlen</u>, 569 F.3d 358, 363 (8th Cir. 2009), <u>cert. denied,</u> 130 S.Ct. 654 (2009). I credit Dr. Channell's opinion — reached after consulting with others engaged in defendant's care over five months of inpatient treatment, interviewing defendant, administering psychological testing, and conducting a fulsome review of the record to date — that defendant is able to understand the proceedings against him and assist his counsel.

## IV.     Conclusion

I find by a preponderance of the evidence that defendant remains competent for sentencing. Sentencing is scheduled on February 28, 2018, at 2:30 p.m.

   February 7, 2018                                       /s/RyaW. Zobel
         DATE                                                  RYA W. ZOBEL
                                                               SENIOR UNITED STATES DISTRICT JUDGE