**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO: 14-CR-10067 |
| | ) | |
| FATHALLA MASHALI | ) | |

### GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The United States of America, by and through Assistant U.S. Attorneys Maxim Grinberg and Abraham R. George, hereby submits this supplemental sentencing memorandum, which responds to two points raised by the defendant in his Memorandum in Aid of Sentence and his Objections to the U.S. Probation Presentence Investigation Report ("PSR") [D. 341, 341-1, filed on 07/21/17].

**I.  DEFENDANT'S OBJECTION TO THE LOSS CALCULATION**

In his objections to the PSR, the defendant writes:

> [T]he defendant states that not all of the amounts billed to government and private insurance companies were fraudulent, and calls upon the Prosecution to delineate with specificity, the fraudulent transactions.

[D. 341-1. Exhibit 1, Objection 1]. He further states: ". . . the methodology in computing the intended loss . . . is flawed at best." [*Id.* Objection 4]. The Defendant's Memorandum in Aid of Sentence states only that the defendant is declining to "provide an 'offer of proof' for the alleged legitimate billings," purportedly due to his mental health issues. [D. 341 at 14]. This is the totality of the defendant's objection to the loss

calculation, which the PSR sets forth in extensive detail [PSR ¶¶ 107-117], and which is corroborated by detailed billing data and calculations provided by the victims, the government's criminal charges, and the defendant's own admissions to the offense conduct. The Court can disregard the defendant's objection and accept the PSR loss calculation.

"The government bears the burden of establishing the amount of loss for purposes of restitution by a preponderance of the evidence." *United States v. Prochner*, 417 F.3d 54, 65 (1st Cir. 2005), citing 18 U.S.C. § 3664(e) and *United States v. Vaknin*, 112 F.3d 579, 583 (1st Cir. 1997). "A PSR generally bears 'sufficient indicia of reliability to permit the district court to rely on it at sentencing.'" *Id.* at 65-66, quoting *United States v. Cyr*, 337 F.3d 96, 100 (1st Cir. 2003). "The defendant may object to facts in the PSR, but 'if [his] objections to the PSR are merely rhetorical and unsupported by countervailing proof, the district court is entitled to rely on the facts in the PSR.'" *Id.* at 66, quoting *Cyr*, 337 F.3d at 100. *Accord United States v. Acevedo*, 824 F.3d 179, 184 (1st Cir. 2016).

In *Prochner*, the PSR contained "the statement of the victims and losses," even though it also acknowledged that "[t]he precise loss figure has been difficult to establish." *Id.* Nevertheless, the loss amount was supported by "specific charges claimed" by various victims. *Id.* The defendant "admitted to making several

2

of the identified charges, but denied or questioned making several other charges." *Id.* Counsel's only objection to the loss calculation was as follows: "I don't have anything other than the defendant's word that these are amounts that he disagrees with." *Id.* The district court accepted the PSR loss calculation. *Id.* On appeal, the defendant argued that "the district court should have excluded the disputed charges rather than shifting the burden of proof to him." *Id.* The First Circuit affirmed the sentence. *Id.* The Court reasoned that "[i]n the absence of rebuttal evidence beyond the defendant's self-serving words, we cannot say the court clearly erred in accepting the PSR's calculation of the restitution amount." *Id.* The information provided by the victim reliably supported the loss calculation. *Id.*

In this case, the government timely disclosed detailed loss calculations to the defense and the U.S. Probation Department. The PSR recites the calculations for seven pages and breaks them down by identified victims and the billing codes and amounts. [PSR ¶ 107-117].

To the extent the defendant claims that "not all of the amounts [he] billed" are fraudulent, the government has not included in the loss calculation every billing code the defendant ever billed. For example, the loss calculation does not reference the defendant's billing for injections and smoking cessation, as the government did not investigate whether the defendant in fact

3

provided these services. The PSR also does not reference lower level Evaluation and Management ("E&M") codes 99211 and 99212, which would be typical of a cursory visit with a nurse. Rather, the PSR references only E&M codes 99213 and 99214 and the urine billing codes that were charged in the scheme to defraud. Reliable evidence supports the loss calculation for these billing codes.

The Centers for Medicare and Medicaid Services ("CMS") conducted a random sampling analysis of the defendant's claims and determined that it would have denied 100% of the claims. [PSR ¶ 113]. The Court may also recall the testimony of the undercover police officer, Hollis Crowley, who saw Mashali as a patient at the end of 2012 and at the beginning of 2013. She was at least six months pregnant at the time. Mashali did not examine her and did not even touch her. There was no examination table. He never asked her about pregnancy. Yet, Mashali's encounter notes for Crowley's visits detailed a head-to-toe physical examination on every visit and stated that she was not pregnant. [*See* PSR ¶ 40].

The offense conduct in the PSR, to which the defendant has not objected, describes NEPA as a pill-mill where patients were overprescribed powerful pain narcotics without any discernible medical services. Some died from overdoses. The Rhode Island Board of Medical Licensure and Discipline concurred with this assessment after a thorough review of the medical records for the patients who died. [PSR ¶¶ 83-88]. Mashali's testing of old,

4

stale urine on chemical analyzers that were not even properly calibrated was worthless. There were no physical examinations or any discernable medical services to justify E&M CPT codes 99213 and 99214. Mashali employed Medical Teams in Cairo, Egypt, whose function it was to create false medical records for medical services that did not take place. [PSR ¶¶ 27-28]. In his own Memorandum in Aid of Sentence, the defendant acknowledges that his "criminal enterprise was fundamentally an outrageous, absurd scheme"; that he "abused and antagonized employees"; that he dealt with "a 100 patients a day often simply milling around until midnight often either dealing drugs or waiting to obtain new prescriptions"; and all of this took place "in a universe of literally innumerable decaying urine stored for weeks/months in a basement which would be ultimately billed out after being tested by using invalidated lab equipment or by[] non-existent lab equipment[] for multiple unnecessary confirmatory tests for every patient." [D. 341 at 15-16].

In sum, the PSR loss calculation is reliable. The defendant has not shown, and cannot show, that the loss calculation methodology is flawed.

## II. DEFENDANT'S REFERENCE TO THE GOVERNMENT'S PLEA OVERTURE

In the Defendant's Memorandum in Aid of Sentencing, counsel references a plea overture from the government. [D. 341 at 3]. As an initial matter, the government did not make a binding plea

5

offer to the defendant.  The U.S. Attorney's Office has had a long-standing policy that no plea offer is binding absent a written plea agreement executed by either the Criminal Division Chief or Deputy Criminal Division Chief.  No line Assistant U.S. Attorney can extend a binding plea offer without first following this approval process to assure the adequacy of the terms of the plea agreement, conformance with the U.S. Department of Justice policies, and uniformity of sentencing in this District.  *See Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012) (approving this practice to assure that the terms of the offer are "clear if some later inquiry turns on the conduct of earlier pretrial negotiations" and recognizing that the government can set "rules that all offers must be in writing, again to ensure against later misunderstandings or fabricated charges").  Absent a written plea agreement executed by the U.S. Attorney's Office, no defendant can seek to enter a plea of guilty according to the terms of a purported verbal plea overture from a line prosecutor.  In this case, the defendant has never received a binding plea offer that was considered and approved by the supervisors with the authority to do so.  Thus, there is no plea offer from the government to consider.

Second, the defendant runs afoul of Rule 11.  That rule states that "[t]he court must not participate in plea discussions".  Fed. R. Crim. P. 11(c)(1).  The Rule limits the court's actions to

6

accepting or rejecting the plea agreement proposed by the parties. Fed. R. Crim. P. 11(c)(3). The policy behind removing the court from plea discussions encompasses the idea that "the interests of justice are best served if the judge remains aloof from all discussions preliminary to the determination of guilt or innocence so that his impartiality and objectivity shall not be open to any question or suspicion when it becomes his duty to impose sentence." *United States v. Bierd*, 217 F.3d 15, 19 (1st Cir. 2000), quoting *United States v. Werker*, 535 F.2d 198, 203 (2d Cir. 1976). "Improper participation resulting in vacation [of the plea] occurs, for example, when a court comments on or mandates what it perceives to be an appropriate penalty for a defendant in the context of plea agreement discussions." *Id.* at 20. Rule 11 "creates a 'bright line rule' that prohibits 'the participation of the judge in plea negotiations under any circumstances ... [and] admits of no exceptions.'" *United States v. Harrell*, 751 F.3d 1235, 1239 (11th Cir. 2014), *quoting United States v. Johnson*, 89 F.3d 778, 783 (11th Cir. 1996).

Consequently, the Court should disregard the defendant's reference to a plea overture from the government.

7

Respectfully submitted,

ANDREW E. LELLING
Acting United States Attorney

By: /s/ Maxim Grinberg
MAXIM GRINBERG, BBO#667521
ABRAHAM R. GEORGE, BBO#668949
Assistant U.S. Attorneys
617-748-3287

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Maxim Grinberg
MAXIM GRINBERG
Assistant United States Attorney

Date: February 21, 2018